**ST. MARY'S CHURCH & MISSION, and the Archdiocese of Denver c/o Gallagher Bassett Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF COLORADO, and Barbara Jean Price, Respondents.**

No. 86CA0343.

Colorado Court of Appeals, Div. II.

Dec. 4, 1986.

Rehearing Denied Jan. 8, 1987.

Certiorari Granted (St. Mary's) April 6, 1987.

Anderson, Campbell & Laugesen, P.C., Michael W. Sutherland, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, Asst. Atty. Gen., Denver, for respondent Indus. Com'n.

Withers, Seidman & Rice, P.C., Gudrun Rice, Grand Junction, for respondent Barbara Jean Price.

STERNBERG, Judge.

In this workmen's compensation case, St. Mary's Church and Mission and the Archdiocese of Denver, c/o Gallagher Bassett Insurance Company (petitioners), seek review of a final order of the Industrial Commission which determined that the average weekly wage for Barbara Jean Price (claimant) was properly calculated by combining her weekly earnings for each of five part-time jobs she held concurrently. We affirm.

The facts are undisputed. Claimant had been employed concurrently on a part-time basis as a house or building cleaner for five different employers when she suffered an admitted injury. Claimant's injury occurred while she was working for St. Mary's Church and Mission, and the injury disabled her from her duties for all of her employers. Claimant's contract with St. Mary's was for one day per week at the rate of $40. Her wages for the remaining jobs totaled an additional $377 weekly.

St. Mary's admitted liability for an average weekly wage of $40. Claimant contested the admission, claiming entitlement to benefits based on her gross weekly income of $417. The hearing officer agreed with claimant and the Industrial Commission affirmed.

Benefits were ordered to be paid based on the higher amount by virtue of the discretionary authority set forth in § 8–47–101(4), C.R.S. (1986 Repl.Vol. 3B). That statute provides:

"Where the foregoing methods of computing the average weekly wage of the employee, by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder or has been ill or in business for himself or for any other reason, will not fairly compute the average weekly wage, the division, in each particular case, may compute the average weekly wage of said employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's average weekly wage."

The "foregoing methods" of computing the average weekly wage which are pertinent here are set forth in §§ 8–47–101(3)(b) and (c), C.R.S. (1986 Repl.Vol. 3B). Subsection (3)(b) provides:

"Where the employee is being paid by the week for his services under a contract of hire, said weekly remuneration at the time of the injury shall be deemed to be the weekly wage for the purposes of articles 40 to 54 of this title."

Subsection (3)(c) provides:

"Where the employee is rendering service on a per diem basis, the weekly wage shall be determined by multiplying the daily wage by the number of days and fractions of days in the week during which the employee under a contract of hire was working at the time of the injury or would have worked if the injury had not intervened. In no case shall the daily wage be multiplied by less than five for the purpose of determining the weekly wage."

On review, petitioners' first contention concerns whether subsection (3)(b) or (3)(c) should have been used in determining whether application of an alternate method authorized by § 8–47–101(4) was appropriate. The hearing officer found that claimant was paid $40 *weekly* by St. Mary's, yet he referred to subsection (3)(c) regarding *per diem* wages in his analysis. Any error in this regard was harmless.

The hearing officer determined that if claimant's $40 *daily* wage was multiplied by 5 as set forth in subsection (3)(c), the $200 total would fall far short of claimant's actual gross wages. Therefore, he concluded § 8–47–101(4) should be applied to devise an alternate method so that claimant would be compensated for her actual loss. This reasoning, petitioners assert, is erroneous because the evidence was undisputed, and the hearing officer found, that the $40 wage was claimant's weekly, not daily, wage. Thus, petitioners conclude subsection (3)(b) should have been applied and § 8–47–101(4) should not have been used. However, even if we were to agree that

subsection (3)(c) was not applicable to the facts here, the result would not change.

The hearing officer's order, affirmed by the Commission, clearly expresses the opinion that claimant should be compensated for her total loss. Therefore, even had subsection (3)(b) been considered, its application would have resulted in a $40 average weekly wage. Since the hearing officer opined that a $200 average weekly wage was inadequate under the undisputed facts here, he certainly would have felt the same about a $40 average weekly wage. Application of either subsection (3)(b) or (3)(c) results in an average weekly wage far below claimant's actual earnings. Accordingly, the hearing officer properly rejected both subsections as a means of determining the appropriate benefits, and any error arising in the analysis used to reach that conclusion is without significance. See § 8–53–122, C.R.S. (1985 Cum.Supp.).

Petitioners next contend that § 8–47–101(4) should not have been resorted to because its application is prejudicial to the employer. They further assert that *State Compensation Insurance Fund v. Lyttle*, 151 Colo. 590, 380 P.2d 62 (1963) and *Dugan v. Industrial Commission*, 690 P.2d 267 (Colo.App.1984) require that the statute not be applied. We disagree.

*Lyttle* merely states that a claimant's wage loss must be determined upon the money rate at which his services were compensated under the contract of hire at the time of the injury. However, it is undisputed that the rate as calculated here is based on claimant's contracts of hire. *Lyttle* did not concern a situation in which there are multiple concurrent contracts of hire, and because of that factual difference, we find no support in *Lyttle* for petitioners' argument that only one contract for hire can be considered.

*Dugan* is also inapposite. There, we held that a claimant who had been laid off from a job which paid $17.60 per hour, and was injured while on a job which paid $3.00 per hour, was not entitled to benefits based on the former rate of pay. The critical distinction there, however, is that the claimant in *Dugan* had contracted to work for one wage of $3.00 hourly, and there was no evidence that, absent the injury, he would have earned more than $3.00 hourly. Therefore, he was not penalized by an award of benefits based on the $3.00 rate.

■ Here, claimant did not intend or contract to earn only $40 per week; rather, she arranged multiple employments in order to make her living. We agree with the Commission that in the situation at issue in which an injury clearly precluded a worker from continuing to earn as she had previously, § 8–47–101(4) is properly applied to devise a fair computation of the true average weekly wage.

Although we recognize that this results in an unexpected loss to the employer, a contrary ruling would be at odds with the humanitarian purpose of the Colorado Workmen's Compensation Act to provide just compensation to injured workers. As explained in A. Larson, *Workmen's Compensation Law* § 60.32(c) at 10–630 (1983), if concurrent employments exist, competing equities between an employer and a worker should be resolved in the worker's favor. See also *Monfort of Colorado v. Husson*, 725 P.2d 67 (Colo.App.1986); *Finnerman v. McCormick*, 499 F.2d 212 (10th Cir.1974).

■ There is no merit to petitioners' assertion that the hearing officer's method of determining claimant's average weekly wage was an improper exercise of "legislation." In granting discretionary authority to the division of labor to utilize an alternative method of computing an average weekly wage if the circumstances so require, the General Assembly contemplated that the enumerated methods of computing wages were not exhaustive.

■ In addition, we disagree with petitioners' argument that the unrefuted evidence of claimant's weekly wage at St. Mary's divested the hearing officer of his authority to otherwise compute claimant's wage. Section 8–47–101(4) specifically authorizes an alternative method if the enumerated methods *"will not fairly* compute the average weekly wage."* (emphasis added) The statute does not restrict its use to

situations in which the enumerated methods are wholly inapplicable.

The order is affirmed.

SMITH and KELLY, JJ., concur.