Kenneth R. FULTON, Petitioner,

v.

King SOOPERS, Industrial Claim Appeals Office and Director, Division of Labor, Respondents.

No. 91SC76.

Supreme Court of Colorado,
En Banc.

Jan. 13, 1992.

**710**

Law Offices of Bruce P. Fierst, P.C., Bruce P. Fierst, Rodney G. Loomis, Denver, for petitioner.

Glasman, Jaynes & McBride, Patricia Jean Clisham, Lydia W. Daugherty, Denver, for respondent King Soopers.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jeanne Labuda, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Director, Div. of Labor.

Justice ERICKSON delivered the Opinion of the Court.

Petitioner Kenneth R. Fulton was injured while employed by respondent King Soopers, and he subsequently filed a claim for workers' compensation. King Soopers admitted responsibility. Fulton requested a hearing before the Department of Labor and Employment, Division of Labor, to present evidence of his permanent disfigurement and partial disability. The Administrative Law Judge (ALJ) limited Fulton's permanent partial disability award to his permanent medical impairment and disfigurement under the limitation set forth in section 8–42–110(3), 3B C.R.S. (1990 Supp.) (repealed 1991) (formerly § 8–51–108(4), 3B C.R.S. (1988 Supp.)), of the Workers' Compensation Act of Colorado.[1] Respondent

1. Section 8–42–110(3), 3B C.R.S. (1990 Supp.), was repealed by Act approved June 6, 1991, ch. 219, sec. 18, § 8–42–110(3), 1991 Colo.Sess.Laws 1291, 1312. The repeal of the statute, however, only applies to injuries occurring after July 1, 1991, and does not affect this case.

The record refers to both section 8–42–110(3) and its former codification, section 8–51–108(4), 3B C.R.S. (1989 Supp.). Except for minor changes in numbering, the language of the most recent codification is the same as the former. To avoid confusion, we will refer in this opinion to the most recent codification, section 8–42–110(3), which provides:

In any case where an employer reemploys or continues the disabled employee at work in the employment of the employer at the employee's preinjury rate of pay and extends to the employee the usual wage adjustments, the

employee's permanent partial disability award shall be limited to permanent medical impairment or a payment under section 8–42–107, whichever is less. This subsection (3) shall not apply if the director finds that due to the injury the employee is permanently unable to perform the duties offered by the employer. If, during the two years following the date of return to work or reemployment, the injured employee, as a result of said employee's permanent disability due to the injury, is dismissed from employment or resigns from employment with the employer, said employee may petition the director for a redetermination of the original permanent partial disability award, and, upon a proper showing of the employee's limitations in the labor market, the director shall order an appropriate award of permanent partial disability.

Industrial Claim Appeals Office (ICAO) affirmed the order of the ALJ. The court of appeals agreed with the ICAO's interpretation of section 8–42–110(3) and affirmed the ICAO's order. *Fulton v. King Soopers, Inc.*, 811 P.2d 421 (Colo.App.1990).

We granted certiorari to address two issues:

1. Is a worker who is delayed in his advancement in labor union status because of an industrial injury extended the usual wage adjustments as contemplated in section 8–42–110(3), 3B C.R.S. (1990 Supp.)?

2. Is a worker who suffers a permanent injury which results in his not being able to perform a substantial number of his pre-injury duties at work permanently unable to perform the duties offered by his employer as contemplated in section 8–42–110(3), 3B C.R.S. (1990 Supp.)?

The court of appeals answered the first question in the affirmative and the second question in the negative. We affirm.

I

Kenneth R. Fulton was employed by King Soopers as an apprentice mechanic. Fulton's duties as a mechanic under his union's collective bargaining agreement included maintenance and repair of various supermarket equipment such as checkstand conveyor belts, automatic door openers, electric motors, batteries, and hydraulic fittings. Fulton began work for King Soopers in 1980 and, as a result of his accumulated work hours, expected that his union would grant him status as a journeyman mechanic in August of 1988.

On May 12, 1988, however, while Fulton, who is right-handed, was attempting to replace certain industrial equipment known as "extend cylinders," the equipment flipped over and crushed three of the fingers on his left hand. Fulton suffered the loss of the end portions, the distal phalanges, of his index and long fingers and sustained damage to the nail plate and finger pad of his ring finger. Fulton required surgery to repair his hand and missed approximately eight weeks of work.

In July 1988, Fulton returned to work at his previous salary, and he resumed his regular work activities by August. Fulton's left hand grip was weakened from the injury. He experienced difficulty accomplishing his tasks and needed assistance lifting checkstand conveyors, repairing overhead door opening mechanisms, loosening hydraulic pipe fittings, and working with small pieces of hardware such as nuts and machine screws. Cold weather also posed a problem for Fulton as a result of reduced circulation and increased sensitivity in his left hand. None of Fulton's supervisors, however, complained about his job performance.

As an apprentice, Fulton received eighty-five pèrcent of the hourly wage paid to a journeyman mechanic. In April 1989, after Fulton had worked the requisite number of hours, the union upgraded his job classification to journeyman mechanic. As a result, Fulton's salary was increased. Fulton testified that the wage increase took place later than it would have had he not been injured.

Following a hearing to determine the extent of Fulton's disability and disfigurement, the ALJ found, based on a report submitted by Fulton's treating physician, that twenty-two percent of Fulton's left hand, or twelve percent of his whole person, was permanently impaired, and that, despite Fulton's continuing disabilities, his job performance was satisfactory.[2]

---

**2.** The ALJ made the following finding regarding Fulton's job performance:

Claimant is unable to do heavy lifting due to strength and grip limitations in his left hand. Claimant must wear a glove while performing his work. Claimant is unable to function well in cold weather and is unable to handle small hardware. Claimant attempts to get assistance from other store employees when doing heavy lifting. Claimant is re-

quired to lift conveyers on an almost daily basis. The conveyers weigh approximately 85 to 90 pounds. Claimant also is unable to work with heavy angle iron, lift batteries, or break hydraulic fittings by himself. Claimant also has difficulty in taking out the overhead door operator since he must hold the operator with one hand and remove the screws with the other hand. Claimant fears that his condition will worsen and that he will lose his

After finding that King Soopers had continued to employ Fulton at his preinjury rate of pay, including usual wage adjustments, and that he was performing his employment duties satisfactorily, the ALJ applied section 8–42–110(3) and limited Fulton's award to his permanent medical impairment and serious bodily disfigurement. The ICAO affirmed the ALJ's order and held that section 8–42–110(3) was applicable because the three-month delay before Fulton achieved journeyman status was a result of his not obtaining the required number of work hours rather than King Soopers' failure to extend the usual wage adjustments. In addition, the ICAO concluded the ALJ's finding that Fulton's job performance was satisfactory was supported by substantial evidence and precluded a determination that Fulton was permanently unable to perform the duties offered him by King Soopers.

A divided panel of the court of appeals affirmed the order of the ICAO, holding that neither a delay in a wage increase due to a union agreement nor the inability of an employee to perform some work duties without difficulty or assistance defeats the application of section 8–42–110(3). *Fulton v. King Soopers, Inc.,* 811 P.2d 421, 422 (Colo.App.1990). In dissent, Judge Dubofsky expressed the concern that employers might use section 8–42–110(3) to avoid paying full permanent partial disability by "carrying" an employee who could not perform a job, and suggested that the award be set aside and that the claim be remanded to the ICAO for an independent determination of whether Fulton could substantially and competitively perform all the duties of a mechanic for King Soopers. *Id.* at 424 (Dubofsky, J., dissenting). The dissent stated that, under section 8–42–110(3), a partially disabled employee may petition for a redetermination of a permanent partial disability award if he is either dismissed or resigns within two years of

reemployment. *Id.* at 423. However, the dissent pointed out that a disabled employee who is carried for two years may be unable to find a new job, and will thereby be deprived of potential benefits and job training. *Id.* at 424.

## II

■ A worker who is delayed in his advancement in labor union status because of an industrial injury is not denied usual wage adjustments. Section 8–42–110(3) provides employers with a method for limiting permanent partial disability awards [3] by reemploying or retaining disabled employees at their preinjury rate, including the usual wage adjustments. An exception is made for an employee who is permanently unable to perform "offered" duties.

The resolution of this case depends upon the meaning of "usual wage adjustments" and Fulton's ability "to perform the duties of the employer." First, Fulton contends his elevation to journeyman status was a usual wage adjustment that was delayed three months, defeating application of section 8–42–110(3). King Soopers responded that Fulton's classification as an apprentice or journeyman mechanic is determined by his union and is thus outside of management control. Second, Fulton asserts section 8–42–110(3) should not apply because his continuing disabilities prevent him from performing all the duties he had prior to the accident. King Soopers, on the other hand, is satisfied with Fulton's job performance even though he has some physical limitations.

## A

■ Review of the ALJ order by the ICAO is limited by section 8–43–301(8), 3B C.R.S. (1991 Supp.) (formerly § 8–53–

---

ability to function as a journeyman mechanic. Claimant has had no complaints from his supervisors about his job performance since his return to work. Claimant has continued to work the same 40-hour work week since his return.

**3.** Permanent partial disability awards were covered by section 8–42–110(1)–(2), 3B C.R.S. (1990 Supp.), *repealed by* Act approved June 6, 1991, ch. 219, sec. 18, § 8–42–110(3), 1991 Colo.Sess. Laws 1291, 1312.

111(7), 3B C.R.S. (1986)).[4] Appellate review of the ICAO's order is similarly governed by section 8–43–308, 3B C.R.S. (1991 Supp.) (formerly § 8–53–120, 3B C.R.S. (1986)).[5] In turn, our review is limited to a determination of whether the ALJ's findings of fact are supported by substantial evidence. The ICAO's affirmance of the ALJ's order is supported by substantial evidence in the record. The ALJ found that Fulton returned to work at his preinjury rate and received the usual wage adjustments since King Soopers paid him at the union scale. In reviewing the order of the ALJ, the ICAO stated:

> The claimant contends that he was not afforded the "usual wage adjustments" following his return to work because his attainment of journeyman status, and resulting increase in his rate of pay under the union agreement, was delayed approximately three months because of the injury. However, the claimant's wage increase was delayed because his temporary disability following the injury delayed his performance of the requisite number of work hours for journeyman status ..., and not because the employer failed to extend the usual wage adjustments following his return to work. Thus, we agree with the ALJ that this circumstance does not defeat the application of section [8–42–110(3)]. The claimant did not otherwise contest the ALJ's finding that he was extended the usual wage adjustments.

Although the record does not include the collective bargaining agreement under which the requirements for Fulton's upgrade to journeyman mechanic may be reviewed, there was other competent evidence. Fulton testified his union local was responsible for determining when he would become a journeyman mechanic. He admitted that to become a journeyman he needed to satisfy an experience requirement by working a requisite number of hours as an apprentice mechanic.

The court of appeals reviewed the holding of the ICAO and agreed "that a delay in [a] wage increase because of a union agreement does not operate to defeat the application of § 8–42–110(3)." *Fulton*, 811 P.2d at 422. Fulton contends that the ALJ abused his discretion since King Soopers failed to meet its burden of proof under *Valley Tree Service v. Jimenez*, 787 P.2d 658 (Colo.App.1990). *Valley Tree*, which was decided subsequent to the court of appeals decision in this case, affirmed an ICAO ruling that for section 8–42–110(3) to apply an employer must prove that it was extending the usual wage adjustments. *Id.* at 661. The court of appeals reasoned that since section 8–42–110(3) was "in the nature of an affirmative defense," the burden of proof should be born by the employer asserting the defense. *Id.* at 660.

There is no burden of proof issue in this case. The issue is not whether King Soopers extended the usual wage adjustments. Rather the issue is whether the loss of wages from Fulton's delayed union advancement should be included in the wage

---

**4.** Section 8–43–301(8), 3B C.R.S. (1991 Supp.), provides, in relevant part:

> The [ICAO] panel may correct, set aside, or remand any order but only upon the following grounds: That the findings of fact are not sufficient to permit appellate review; that conflicts in the evidence are not resolved in the record; that the findings of fact are not supported by the evidence; that the findings of fact do not support the order; or that the award or denial of benefits is not supported by applicable law. *If the findings of fact entered by the director or administrative law judge are supported by substantial evidence, they shall not be altered by the panel.*

(Emphasis added.)

**5.** Section 8–43–308, 3B C.R.S. (1991 Supp.), provides:

> Upon hearing the action, the court of appeals may affirm or set aside such order, but only upon the following grounds: That the findings of fact are not sufficient to permit appellate review; that conflicts in the evidence are not resolved in the record; that the findings of fact are not supported by the evidence; that the findings of fact do not support the order; or that the award or denial of benefits is not supported by applicable law. *If the findings of fact entered by the director or administrative law judge are supported by substantial evidence, they shall not be altered by the court of appeals.*

(Emphasis added.)

adjustments.[6] On direct examination, Fulton testified that the union had delayed him from achieving journeyman status. On cross-examination, Fulton admitted that the reason for the delay was that he had not met the union's experience requirement.

The purpose and structure of section 8–42–110(3) support the ICAO's finding that a union decision to advance an employee is not a usual wage adjustment.

> Section 8–42–110(3) ... is intended to encourage employers to retain employees whose injuries arose during their employment and who are permanently partially disabled. The statute provides an economic incentive to employers to continue the employment of such disabled employees because the amount of money which a disabled employee can receive for his partial permanent disability is limited to either a payment for permanent medical impairment or a scheduled payment under § 8–42–107, ... whichever is less. *See Boice v. Industrial Claim Appeals Office*, 800 P.2d 1339 (Colo.App.1990).

*Fulton*, 811 P.2d at 432 (Dubofsky, J., dissenting). The incentive provided by the statute would be meaningless if the acts required to trigger the statutory limitation were outside the control of the employer. Consequently, a construction of the statute that includes union classification upgrades as part of usual wage adjustments would provide a cost-control incentive without a means for the employer to control cost.

### B

■ A worker who suffers a permanent injury that results in his not being able to perform a substantial number of preinjury duties at work may or may not be permanently unable to perform the duties offered by his employer subsequent to the injury as contemplated in section 8–42–110(3). Section 8–42–110(3) may not be applied to

limit a permanent partial disability award "if the director finds that due to the injury the employee is permanently unable to perform the duties offered by the employer." Fulton contests the ALJ's finding that he was not permanently unable to perform the duties offered by King Soopers, not because he disagrees with the finding, but rather because he believes the statute allows an employer too much discretion in defining post-injury duties. To achieve a proper result, Fulton insists, the ALJ should have focused on his employability in the open labor market.

■ It is clear from the record that Fulton cannot perform his job as he did prior to his injury. Thus the ALJ's findings in this respect are adequately supported by evidence in the record. As a result of his injury, Fulton needs assistance when lifting heavy equipment and has difficulty working in cold weather. Although the record is silent on the specific duties King Soopers required of Fulton before and after his injury, it does show that no one at King Soopers complained about Fulton's post-injury job performance. Fulton testified that he does not believe his job is in jeopardy. The evidence is sufficient to support a finding that Fulton was not permanently unable to perform his required duties. The burden to prove his inability to perform his required duties rests on Fulton and not King Soopers. *See* Arthur Larson, 3 *The Law of Workmen's Compensation* § 80.33(a) (1989). To the extent that *Valley Tree* is inconsistent with this opinion, it is disapproved. Since all Fulton has shown is that he sometimes needs assistance performing heavy lifting and suffers discomfort in cold weather, he has failed to meet his burden. To meet his burden, Fulton had to prove that he could not perform his assigned duties as a mechanic at King Soopers.

---

6. At the hearing, Fulton's attorney admitted that but for three months of journeyman's pay Fulton received the usual wage adjustments:

> MR. FIERST: No[,] we're not disputing that [section 8–42–110(3)] applies. I think there's certain things he's permanently unable to do. And we feel that he has—at this time he's now gotten the usual wage adjustments; he hadn't

at that time, but he was an apprentice and now he's a journeyman. It's basically the crux of Mr. Fulton's testimony.

> THE COURT: You don't dispute that?

> MR. FIERST: Well, we do. He was an apprentice and it took him longer to get to journeyman.

## III

When an employee suffers a permanent partial disability, future employment opportunities may be limited. The General Assembly, in section 8–42–110(3), provided an incentive for employers to rehire partially disabled employees in order to benefit both employers and employees. The employer saves on the permanent partial disability award and need not train a new employee. The employee retains a job that might otherwise be difficult to obtain on the open market, but loses a permanent partial disability award. The construction of the statute suggested by Fulton would deter employers from taking advantage of the reemployment provisions of section 8–42–110(3), and would frustrate the statutory intent to benefit both employers and partially disabled employees.

In accordance with the legislative purpose of section 8–42–110(3), we hold that usual wage adjustments do not include expected union job classification upgrades. As a result, Fulton's delay in attaining journeyman mechanic status does not defeat the application of section 8–42–110(3) to limit this award. We also hold that section 8–42–110(3) is applicable since Fulton failed to prove that he is unable to perform his duties as a mechanic for King Soopers.

Accordingly, we affirm the judgment of the court of appeals.

LOHR, J., concurs in part and dissents in part.

Justice LOHR concurring in part and dissenting in part:

I concur in part IIA of the majority opinion. I dissent to part IIB, however, because I am persuaded that the administrative law judge and the appellate tribunals that have reviewed this case have misconstrued the standard established by section 8–42–110(3), 3B C.R.S. (1990 Supp.), to determine whether an employer is entitled to limit an award of permanent partial disability benefits by reemploying an injured employee. I would remand the case for application of what I believe to be the correct standard.

Section 8–42–110(3) creates an incentive for employers to retain or reemploy persons who suffer a permanent partial disability as a result of injuries sustained in the course of their employment. This incentive takes the form of reduction in the amount of disability benefits payable if an employer continues to employ a partially disabled employee and if the standards set by the statute are satisfied. Section 8–42–110(3) provides:

In any case where an employer reemploys or continues the disabled employee at work in the employment of the employer at the employee's preinjury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability award shall be limited to permanent medical impairment or a payment under section 8–42–107, whichever is less. *This subsection (3) shall not apply if the director finds that due to the injury the employee is permanently unable to perform the duties offered by the employer.* If, during the two years following the date of return to work or reemployment, the injured employee, as a result of said employee's permanent disability due to the injury, is dismissed from employment or resigns from employment with the employer, said employee may petition the director for a redetermination of the original permanent partial disability award, and, upon a proper showing of the employee's limitations in the labor market, the director shall order an appropriate award of permanent partial disability.

(Emphasis added.)

Petitioner Kenneth R. Fulton suffered a permanent partial disability when he injured his left hand in the course of his employment as an apprentice mechanic with King Soopers. After a time, he returned to that same work at the same salary. A hearing was held before an administrative law judge (ALJ) of the Department of Labor and Employment to determine the extent of Fulton's disability and

the disability award to which he was entitled. The ALJ made the following findings concerning Fulton's ability to perform his work:

Claimant is unable to do heavy lifting due to strength and grip limitations in his left hand. Claimant must wear a glove while performing his work. Claimant is unable to function well in cold weather and is unable to handle small hardware. Claimant attempts to get assistance from other store employees when doing heavy lifting. Claimant is required to lift conveyers on an almost daily basis. The conveyers weigh approximately 85 to 90 pounds. Claimant also is unable to work with heavy angle iron, lift batteries, or break hydraulic fittings by himself. Claimant also has difficulty in taking out the overhead door operator since he must hold the operator with one hand and remove the screws with the other hand. Claimant fears that his condition will worsen and that he will lose his ability to function as a journeyman mechanic. Claimant has had no complaints from his supervisors about his job performance since his return to work. Claimant has continued to work the same 40–hour work week since his return.

The ALJ found that Fulton "has returned to his same job and is performing the job without complaints from his supervisors." The ALJ accordingly concluded that Fulton was performing his duties on a satisfactory basis and that his permanent partial disability award should therefore be limited pursuant to section 8–42–110(3). The Industrial Claim Appeals Panel affirmed on the basis that "[t]he ALJ's finding that the claimant is performing his preinjury job without complaints from his supervisors is supported by substantial evidence, and is therefore binding on review." The Colorado Court of Appeals affirmed in a divided opinion. *Fulton v. King Soopers, Inc.*, 811 P.2d 421 (Colo.App.1990). We granted certiorari, and now the majority affirms as well.

The critical issue on which the applicability of the statutory limitation of award for permanent partial disability benefits turns is whether "due to the injury the employee is permanently unable to perform the duties offered by the employer." § 8–42–110(3). The ALJ's implicit conclusion that Fulton was not permanently unable to perform the duties offered by King Soopers was based on the finding that Fulton had returned to the same job "and is performing the job without complaints from his supervisors." This finding also supplies the basis for the conclusions of the Industrial Claim Appeals Panel and the majority opinion of the Colorado Court of Appeals that the statutory standard was satisfied. Justice Erickson's majority opinion for this court now appears to adopt that same analysis. *See* op. at 714–715.

In his dissent to the court of appeals' majority opinion, Judge Dubofsky rejects the construction of section 8–42–110(3) apparently adopted by the ALJ, the Industrial Claim Appeals Panel, a majority of the panel of the court of appeals, and now by a majority of this court—that if the employer is willing to accept without complaint even a greatly reduced level of performance of the employee's job assignment, then the employee is able to "perform the duties offered by the employer." Rather, the dissenting judge would construe the statute to require that the employee "can substantially perform in a competitive manner all of the duties offered by the employer," i.e., the duties of the job that the employee is assigned to perform, before the limitations on a permanent disability award will be applicable under section 8–42–110(3). *Fulton*, 811 P.2d at 424. I agree with this conclusion and with the reasoning on which it is based. No useful purpose would be served by restating Judge Dubofsky's analysis here.

I concur in part IIA of the majority opinion, dissent to part IIB, and would remand the case for an administrative determination whether Fulton can substantially perform in a competitive manner all of the duties offered by his employer.