**SNYDER OIL COMPANY and Colorado Compensation Insurance Authority, Petitioners,**

**v.**

**Frank EMBREE; The Industrial Claim Appeals Office of the State of Colorado; and Director, Division of Labor, Respondents.**

No. 91CA0158.

Colorado Court of Appeals,
Div. II.

May 21, 1992.

Rehearing Denied June 25, 1992.

Certiorari Granted Nov. 9, 1992.

Paul Tochtrop, Denver, for petitioners.

Rebecca A. Koppes, Greeley, for respondent Frank Embree.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jill M.M. Gallet, Asst. Atty. Gen., Denver, for respondents Indus. Claim Appeals Office and Director, Div. of Labor.

Opinion by Judge JONES.

Snyder Oil Company (employer) seeks review of a final order of the Industrial Claim Appeals Panel determining permanent disability of Frank Embree (claimant) as a working unit rather than limiting such disability to a medical impairment rating. We affirm.

Claimant worked for employer while he also concurrently maintained a small dairy farm. He suffered an admitted work-related injury while working for employer which rendered him unable to perform the duties on the dairy farm as he had for 22 years prior to his injury.

Claimant returned to his employment with employer at his pre-injury rate of pay and was provided the usual wage adjustments. However, while the evidence reflected that claimant earned income estimated to be $2,000 per year from the dairy farm and, although his wife continued to work the farm after claimant's injury, his testimony disclosed that his income for the current year, including that from the dairy operation, would be reduced, in part, because of his inability to perform the farm work.

Relying on *St. Mary's Church & Mission v. Industrial Commission*, 735 P.2d 902 (Colo.App.1986), the Administrative Law Judge (ALJ) found that claimant's profits from his secondary farming operation were part of his "pre-injury rate of pay." Based on this interpretation, the ALJ concluded that the employer had not shown that the claimant was continued at his pre-injury rate of pay with the usual wage adjustments. The ALJ determined, therefore, that Colo.Sess.Laws 1990, ch. 62, § 8–42–110(3) at 499 did not limit the claimant's permanent partial disability benefits.

In affirming the ALJ's order, the Panel observed that it was unclear whether the drafters of § 8–42–110(3) had contemplated the situation in which claimant received his "pre-injury rate of pay" from multiple sources. Nevertheless, referring to *Jefferson County Public Schools v. Dragoo*, 765 P.2d 636 (Colo.App.1988) and *St. Mary's Church & Mission v. Industrial Commission, supra*, the Panel agreed that an employee's rate of pay may include the remuneration from concurrent employers and adhered to the position that § 8–42–110(3) does not apply when claimant proves that an actual wage decrease has occurred, even in a concurrent employment.

The Panel concluded, therefore, that the ALJ had properly determined that § 8–42–110(3) did not apply unless claimant receives his total pre-injury rate of pay and usual wage adjustments from all sources. We agree.

At the times pertinent here, § 8–42–110(3) provided in pertinent part:

In any case where an employer reemploys or continues the disabled employee at work in the employment of the employer at the employee's pre-injury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability award shall be limited to permanent medical impairment or a payment under section 8–42–107, whichever is less. (Repealed effective July 1, 1991, Colo.Sess.Laws 1991 at 1312)

Employer notes that § 8–42–110(3) refers to any case in which "an employer" continues to employ or reemploys the injured worker. Therefore, it asserts that the statute was not intended to limit liability for permanent disability only when *all* employers of a claimant return him to employment. It argues that such a condition is one over which an individual employer has no control, particularly if, as here, the claimant is his own employer and can, to some extent, control his additional employment. Further, it contends that the interpretation adopted by the Panel frustrates the purpose of the statute to encourage reemployment of injured workers. We are not persuaded by these arguments.

In the construction of statutes, the singular includes the plural. Section 2–4–102, C.R.S. (1980 Repl.Vol. 1B); *Kelln v. Department of Revenue*, 719 P.2d 358 (Colo. App.1986). Therefore, contrary to the employer's arguments, the use of the term "employer" as opposed to the term "employers" is without significance.

Furthermore, we note that, in enacting § 8–42–110(3), the General Assembly provided an economic incentive to employers to continue the employment of certain disabled employees who are capable of continuing to make positive contributions in the work place. When applicable, the statute provides a fair formula for compensation to the injured worker which is, however, inevitably in an amount less than that which a permanent partially disabled employee not continued or reemployed would receive. *See Fulton v. King Soopers*, 811 P.2d 421 (Colo.App.1990), *aff'd*, 823 P.2d 709 (Colo.1992).

Thus, the statute benefits those employers that recognize the value of trusted and experienced employees who, with appropriate adjustments, can continue after an industrial injury to provide their labor and expertise in the work place. Conversely, in our view, the General Assembly did not intend such employees to be penalized if injuries occasioned by their labor for their principal employer result in reduced income from other employment sources.

This interpretation of the statute is not contrary to the concern expressed by the Supreme Court in *Fulton, supra,* that if the acts required to trigger the statutory limitation were outside the control of the employer, "[t]he incentive provided by the statute [to the employer] would be meaningless." *Fulton v. King Soopers, supra.* Our construction of § 8–42–110(3) provides an incentive to *all* employers to continue their employees at their pre-injury rate of pay with the usual wage adjustments in order to trigger the statutory limitation.

In *Fulton, supra,* the court comments on the fact that "a union decision to advance an employee is not a usual wage adjustment." Thus, the court determined, as a matter of law, that delayed union advancement is not in the nature of a wage or an adjustment to wages, such as recognized benefits and actual earnings received, and other accoutrements of employment, including loss of ability to do certain work functions. *See Boice v. Industrial Claim Appeals Office,* 800 P.2d 1339 (Colo.App. 1990).

Here, as in *St. Mary's Church & Mission, supra,* specific earnings from concurrent employment determine whether claimant would receive or the extent to which claimant would receive a workers' compensation benefit. As the statute is applied to the primary employer here, the employer is still capable of controlling its own compliance with the statutory requirements that trigger the limitation on disability compensation, unlike the employer in *Fulton, vis-a-vis* decisions made independently by a labor organization.

Application of the statutory limitation in this instance would confer a benefit upon

the employer but would result in a detriment to the employee. And, unlike the situation in *Fulton* in which the court focused on the employee's failure to prove his inability to perform his required duties and to earn wages and benefits as before his injury, here, the ALJ expressly found that the employee could no longer perform the duties required by his concurrent employment with a corresponding loss of income. The exceptional circumstances here, that the employee was self-employed in his concurrent employment, does not change the nature of this finding.

Thus, in the case of multiple employers, the equities of the Workers' Compensation Act require us to look beyond the single employer because the statute's intent is to benefit both employers and employees. *See Fulton v. King Soopers, supra.*

If an employee is continued or reemployed at his pre-injury rate of pay and receives the wage adjustments granted to other employees with comparable status, § 8–42–110(3) operates to limit the applicable workers' compensation award because "pre-injury rate" and "the usual wage adjustments" received by the worker leave him or her without continuing wage loss. It follows, then, that if a worker is continued or reemployed at less than the pre-injury rate, or if such worker cannot receive bonuses, raises, promotions or other "usual wage adjustments" because of, or on account of, his or her permanent partial disability, § 8–42–110(3) cannot apply and the person must be compensated for the disability.

In the *St. Mary's Church & Mission* case, a division of this court held that, for purposes of determining average weekly wage pursuant to §§ 8–47–101(3) and 8–47–101(4), C.R.S. (1986 Repl.Vol. 3B), it was appropriate to combine the weekly wages from five part-time jobs concurrently held by the employee because the "injury clearly precluded [her] from *continuing to earn* as she had previously," and that such was "a fair computation of the *true* average weekly wage." (emphasis added) *See Jefferson County Public Schools v. Dragoo, supra.*

We conclude that similar reasoning must be applied under the facts here and, thus, mandates consideration of income from concurrent employment for purposes of determining whether § 8–42–110(3) is applicable. While this may result in some cost to employers, a different result would be contrary to the humanitarian purposes underlying the Colorado Workers' Compensation Act. *See St. Mary's Church & Mission v. Industrial Commission, supra.*

Competing equities between an employer and an employee should be resolved in the worker's favor. *See* 2 A. Larson, *Workmen's Compensation Law* § 60.32(c) (1987). Thus, when a permanent partial disability suffered in the course or scope of a worker's principal employment results in reduced compensation from concurrent employers, it is appropriate to conclude that § 8–42–110(3) does not apply. To hold otherwise would be to penalize the injured employee by withholding the full measure of workers' compensation benefits, even though a covered injury received in the course of his or her principal employment has caused a deficiency in the whole person such that remuneration from concurrent employment is disadvantageously affected and the worker's overall income is reduced.

Such intent by the General Assembly cannot be discerned from the plain language of § 8–42–110(3). Indeed, the emphasis in the statute which the General Assembly placed on "pre-injury rate of pay" and "the usual wage adjustments" implies that, as a matter of policy, the pre-injury compensation from concurrent employers may not be reduced either.

Accordingly, we conclude that § 8–42–110(3) does not apply when a work-related injury causes an actual decrease in remuneration from concurrent employers. We, therefore, adopt the Panel's conclusions as our own.

The order is affirmed.

TURSI, J., concurs.

ROTHENBERG, J., dissents.

Judge ROTHENBERG dissenting.

I respectfully dissent.

Recently, our Supreme Court construed the same statute in *Fulton v. King Soopers*, 823 P.2d 709 (Colo.1992). There, the court rejected Fulton's contention that a loss of wages from his delayed union advancement should be included in wage adjustments calculated under Colo.Sess.Laws 1990, ch. 62, § 8–42–110. (Repealed effective July 1, 1991, Colo.Sess.Laws 1991 at 1312). In so ruling, the supreme court stated that "[t]he incentive provided by the statute would be meaningless if the acts required to trigger the statutory limitation were *outside the control of the employer.*" (emphasis added)

Similarly, here, I agree with respondents that, under the Panel's interpretation, "the acts required to trigger the statutory limitation were outside the control of the employer."

Nor does our decision in *St. Mary's Church & Mission v. Industrial Commission*, 735 P.2d 902 (Colo.App.1986) compel another result. There, claimant had five part-time jobs and worked by the hour. The issue was how to determine her average weekly wages for purposes of awarding workers' compensation benefits. The court did not construe § 8–42–110(3), the statute at issue here. And, even assuming *arguendo* that *St. Mary's Church* cannot be distinguished, I submit that the supreme court's clear and directive language in *Fulton* is now controlling.

I would, therefore, set aside the order of the Industrial Claim Appeals Panel and remand with directions to apply § 8–42–110(3).