SNYDER OIL COMPANY and Colorado Compensation Insurance Authority, Petitioners,

v.

Frank EMBREE; The Industrial Claim Appeals Office of the State of Colorado; and Director, Division of Labor, Respondents.

No. 92SC437.

Supreme Court of Colorado, En Banc.

Nov. 15, 1993.

Michael J. Steiner, Denver, for petitioners Colorado Compensation Ins. Authority and Snyder Oil Co.

Rebecca Koppes, Greeley, for respondent Frank Embree.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Snyder Oil v. Embree*, 839 P.2d 494 (Colo.App.1992), the Colorado Court of Appeals held that section 8–42–110(3), 3B C.R.S. (1990 Supp.), of the Colorado Workers' Compensation Act[1] did not limit the liability of petitioners Snyder Oil Company and its insurer, the Colorado Compensation Insurance Authority, for permanent partial disability suffered by a disabled employee,

---

1. The court of appeal's opinion refers to § 8–42–110(3), 3B C.R.S. (1990 Supp.), as the applicable statute. Section 8–42–110(3) was adopted March 13, 1990, as part of a general recodification of the Workers' Compensation Act. Ch. 62, § 8–42–110(3), 1990 Colo.Sess.Laws 468, 494. It replaced § 8–51–108(4), 3B C.R.S. (1987 Supp.), which statute was applicable to Embree's claim. *See* ch. 51, sec. 7, § 8–51–108(4), 1987 Colo.Sess.

Laws 389. The two sections are substantially identical, and for purposes of clarity we will refer to the statute at issue as § 8–42–110(3).

Section 8–42–110(3) was repealed in 1991, effective July 1, 1991. *See* Act approved April 19, 1991, ch. 219, sec. 18, § 8–42–110(3), 1991 Colo. Sess.Laws 1291, 1312–13. The statute's repeal does not affect Embree's claim. *See Fulton v. King Soopers,* 823 P.2d 709, 710 n. 1 (Colo.1992).

respondent Frank E. Embree, at Embree's preinjury rate of pay. The court of appeals concluded that the statute was inapplicable because Embree's work-related injury resulted in a decrease in remuneration he previously received from concurrent employers. Having granted Snyder Oil's petition for certiorari, we reverse and remand to the court of appeals with directions.

## I

In February 1988, while employed as a pumper by Snyder Oil, Embree slipped on a stairway of a production tank made slick with oil and ice and sustained injuries to his hip and left shoulder. Shortly thereafter, while again performing work for Snyder Oil, Embree re-injured his left shoulder while loading a flat tire onto the bed of a pickup truck.

Embree subsequently filed a workers' compensation claim with the Colorado Department of Labor and Employment. *See* § 8–53–101, 3B C.R.S. (1986) (repealed 1990). Snyder Oil admitted liability for temporary total disability in the amount of $3,937.14 and for permanent partial disability in the amount of $3,120. Snyder Oil based its admission of liability for permanent partial disability on section 8–42–110(3), which statute provides as follows:

> (3) In any case where an employer reemploys or continues the disabled employee at work in the employment of the employer at the employee's preinjury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability award shall be limited to permanent medical impairment or a payment under section 8–42–107, whichever is less. This subsection (3) shall not apply if the director finds that due to the injury the employee is permanently unable to perform the duties offered by the employer. If, during the two years following the date of return to work or reemployment, the injured employee, as a result of said employee's permanent disability due to the injury, is dismissed from employment or resigns from employment with the employer, said employee may petition the director for a redetermination of the original permanent partial disability award, and, upon a proper showing of the employee's limitations in the labor market, the director shall order an appropriate award of permanent partial disability.

§ 8–42–110(3), 3B C.R.S. (1990 Supp.). Embree contested Snyder Oil's admission of liability and subsequently requested a hearing before an administrative law judge concerning permanent disability benefits and disfigurement.

At the September 1989 hearing, Embree testified that while he was employed at Snyder Oil he was also a self-employed dairy farmer. Embree stated that because his injuries prevented him from performing irrigation and other activities requiring heavy lifting necessary to maintain the farm, he had suffered some loss in revenue. At the conclusion of the hearing, the administrative law judge found that Embree returned to his employment with Snyder Oil in July of 1988 at the same rate of pay he had received from Snyder Oil prior to his injury; that he suffered a functional impairment of nine percent of the whole body as a working unit; and that he was not able to work as a dairy farmer. The administrative law judge found that Embree was able to return to only one of the two occupations he held at the time of his injury.

The administrative law judge determined that in order for Snyder Oil to qualify for the liability limitations established by section 8–42–110(3), it would have had to reemploy Embree at a rate of pay equivalent to the sums he previously received from both occupations. The administrative law judge concluded that because Snyder Oil had reemployed Embree at a rate of pay equal only to the salary level he was receiving from the company when he was injured, section 8–42–110(3) was not applicable and Snyder Oil was liable for permanent partial disability benefits in the amount of $16,286.40. Upon review, the Industrial Claim Appeals Office affirmed.

Snyder Oil appealed the decision to the court of appeals. The court affirmed, concluding that section 8–42–110(3) is not applicable unless upon reemployment the claimant receives remuneration equal to the total of his or her preinjury pay from all sources. Noting that its decision might result in added cost to employers, the court reasoned that its construction of the statute furthered the legislative policy of providing an incentive for employers to continue to employ their disabled employees at preinjury rates of pay.

## II

■ Snyder Oil argues that section 8–42–110(3) is applicable to limit an employer's liability when, as here, an injured employee is reemployed at the rate of pay paid to that employee by the employer prior to the injury. We agree.

■ Well established principles of statutory construction guide the resolution of the issue presented. Statutes are to be construed in such manner as to further the legislative intent for which they were enacted. *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 648 (Colo.1991). To discern the intent of the General Assembly, we first examine the language of the statute. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991). Words and phrases should be given effect according to their plain and ordinary meaning unless the result is absurd. *Colorado Dep't of Social Servs. v. Board of City Comm'rs*, 697 P.2d 1, 18 (Colo.1985). Where the statutory language is clear and unambiguous, we need not resort to interpretative rules of statutory construction. *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo. 1992).

Section 8–42–110(3) provides benefits for an employer liable for permanent partial disability benefits to an employee injured while working for that employer. It applies only to an employer who reemploys an injured employee "at the employee's preinjury rate of pay" and extends "the usual wage adjustments" to the employee. Read as a whole, and giving full meaning to the plain language thereof, the words "rate of pay" and "usual wage adjustments" are limited to the payment arrangements between the injured employee and the employer who is liable for payment of disability benefits because the injury-producing work was performed for that employer.

We recently considered the meaning and purpose of section 8–42–110(3) in *Fulton v. King Soopers*, 823 P.2d 709 (Colo.1992). In that case the claimant, a member of a union, was injured during his employment at King Soopers. Two months after the injury, the claimant returned to work at his preinjury rate of pay. However, as a result of his injury the claimant was not elevated to the position of a journeyman mechanic by the union until approximately three months later than would have been the case had he not been injured.

King Soopers asserted that the limitations on employer liability for workers' compensation benefits established by section 8–42–110(3) were available to it. The claimant argued that because his elevation to journeyman status was a usual wage adjustment and because King Soopers did not pay him a higher wage until he actually obtained the higher job classification, King Soopers did not extend to him the usual wage adjustments required by the statute and was therefore not eligible to benefit from its provisions.

We rejected the claimant's construction of section 8–42–110(3). We noted that in enacting that statute, the General Assembly attempted to provide an incentive for employers to rehire disabled employees which in turn would benefit both employers and employees. *Fulton*, 823 P.2d at 715. *See Boice v. Industrial Claim Appeals Office*, 800 P.2d 1339, 1341 (Colo.App.1990). We stated that employers would benefit because they would save on their liability for permanent partial disability and would save the expense of training new employees. *Fulton*, 823 P.2d at 715. We also observed that employees would benefit because they would retain a job that might otherwise be difficult to obtain on the open market. *Id.*

We found, however, that the incentive created by the statute would be rendered meaningless "if the acts required to trigger the statutory limitation were outside the control of the employer." *Id.* at 714. We suggested that if employers through their conduct were unable to control the applicability of the statutory limitation, they would be deterred from taking advantage of the reemployment provisions, contrary to the legislative intent and to the detriment of both employers and partially disabled employees. *Id.* at 714–15. We thus concluded that because the decision to upgrade the claimant to journeyman mechanic was the responsibility of the union, not King Soopers, a construction of the statute that prevented King Soopers from qualifying for its benefits would contravene the legislative intent.

In this case, Snyder Oil sought to take advantage of the reemployment incentive of section 8–42–110(3) by reemploying Embree at the wage rate paid by Snyder Oil to Embree prior to his injury. The court of appeals held that section 8–42–110(3) did not apply to Snyder Oil on the ground that for purposes of the statute an employee's preinjury rate of pay includes sums the employee received from all prior employers. The court reconciled its opinion with our decision in *Fulton* by noting that unlike the situation in that case, wherein the acts required to fulfill the statutory requirements were decisions made independently by a third party, in this case "the employer is still capable of controlling its own compliance with the statutory requirements that trigger the limitation on disability compensation...." *Snyder Oil Co.*, 839 P.2d at 496. We reject this conclusion.

When an employee of multiple employers is injured, some of those employers may not wish to continue the prior employment relationship.[2] However, when the injured employee is also self-employed, such employee may elect not to retain himself or herself at the preinjury rate of pay solely to ensure that his or her permanent partial disability benefits are not reduced if another of the employers rehires the employee. The statute is not designed to so penalize employers who reemploy workers who are also self-employed. Furthermore, if the applicability of the statutory limitations is determined by the conduct of others, no employer could control "the acts required to trigger the statutory limitation." *Fulton*, 823 P.2d at 714.

■ The statute is designed to encourage, not discourage, reemployment of injured employees. The potentially prohibitive cost consequences to employers considering whether to reemploy injured employees indicates that adoption of the statutory construction urged by Embree would render the incentive established therein meaningless. However, section 8–42–110(3) also contains protections for employees. By its terms, the section is not applicable if the employee is permanently unable to perform the duties offered by the employer. The statute also provides that an injured employee may request a redetermination of the permanent partial disability award at any time during the two-year period following his or her reemployment if, as a result of the permanent disability caused by the injury, the employee is dismissed or resigns from employment. While encouraging employers to reemploy injured employees, the General Assembly also protected injured employees from exploitation by unprincipled employers.

■ We have determined that for purposes of the benefits provided employers by section 8–42–110(3), the relevant rate of pay is the amount paid by the reemploying employer to the injured employee prior to the injury, without regard to income from other employment previously enjoyed by the employee. We therefore conclude, contrary to the determination of the court of appeals, that in the circumstances of this case Snyder Oil is subject to the provisions of section 8–42–110(3) and, therefore, is entitled to the benefits provided therein.

---

**2.** It is not disputed that as a result of his work-related injury Embree could not carry out certain strenuous farming activities he had performed prior to the injury.

### III

For the foregoing reasons, we reverse the judgment of the court of appeals. The case is remanded to that court for remand to the Industrial Claim Appeals Office with directions to apply section 8–42–110(3) to the circumstances of this case consistent with this opinion.

SCOTT, J., dissents.

LOHR and MULLARKEY, JJ., join in the dissent.

Justice SCOTT dissenting:

The majority holds that "for purposes of the benefits provided employers by section 8–42–110(3), [3B C.R.S. (1990 Supp.),] the relevant rate of pay is the amount paid by the reemploying employer to the injured employee prior to the injury, without regard to income from other employment previously enjoyed by the employee." Op. at 263–264. Because such an interpretation of our state workers' compensation law unfairly reduces the disability compensation payments otherwise paid to workers and unduly favors employers, I respectfully dissent.

### I

The legal issue before the court is whether under section 8–42–110(3)[1] an employer may reduce its liability for disability payments when the employer rehires the worker at a salary that is less than the employee's pre-injury wages from former employment. The majority would deny full disability benefits to the worker and, at the same time, reduce employer liability for disability payments so as to not "penalize employers." Op. at 263. This result, granting the employer reduced liability without conferring a corresponding benefit to employees in return, is contrary to both the letter and spirit of our Workers' Compensation Act.[2]

Our workers' compensation laws are intended to compensate for the loss of wage-earning capacity due to a work-related injury. In cases arising under pre–1990 provisions of the Workers' Compensation Act, we expressly recognized that the Act should be construed liberally to accomplish its benevolent and full remedial purposes of protecting employees who sustain work-related injuries. *See, e.g., Bellindir v. Kezer,* 648 P.2d 645, 647 (Colo.1982); *Claimants Death of Garner v. Vanadium Corp.,* 194 Colo. 358, 360, 572 P.2d 1205, 1206–07 (1977); *Frohlick Crane Serv., Inc. v. Mack,* 182 Colo. 34, 38, 510 P.2d 891, 893 (1973); *James v. Irrigation Motor & Pump Co., Inc.,* 180 Colo. 195, 199, 503 P.2d 1025, 1028 (1972). Thus it is clear

---

1. The relevant language of section 8–42–110(3) provides that in

   any case where an employer reemploys or continues the disabled employee at work in the employment of the employer at the employee's pre-injury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability awards shall be limited to permanent medical impairment or a payment under section 8–42–107, which ever is less.

2. The purpose of workers' compensation statutes is to provide an equitable recovery to employees when they sustain a work-related injury; the employee acquires a benefit, but also relinquishes his or her right to sue the employer for damages for the injury. Similarly, when an employer, pursuant to § 8–42–110(3), reemploys the employee at his or her pre-injury rate of pay following a work-related injury, the same principle is at work, i.e., the employee is in effect relinquishing the right to sue his or her employer for full disability compensation. *See general-*

ly *United States v. Demko,* 385 U.S. 149, 151, 87 S.Ct. 382, 383, 17 L.Ed.2d 258 (1966) ("Historically, workmen's compensation statutes were the offspring of a desire to give injured workers a quicker and more certain recovery than can be obtained from tort suits based on negligence and subject to common-law defenses to such suits. Thus compensation laws are practically always thought of as substitutes for, not supplements to, common-law tort actions."); *see also* A. Larson, The Law of Workmen's Compensation §§ 1.00–5.30, at 1–1 through 2–25 (1993) (describing the character, origin and purposes of workers' compensation law); A. Larson, *The Nature and Origins of Workmen's Compensation,* 37 Cornell L.Q. 206 (1952) ("[T]he employee and his dependents, in exchange for . . . modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the [workers' compensation] act."). Thus the very nature of our workers' compensation law is an accommodation between the conflicting interests of employers and their employees.

that the Workers' Compensation Act, effective at the time of Embree's injury, was primarily designed so that employee benefits would be based on compensation bearing a fair approximation to the employee's proven and real earning capacity. I believe the majority holding is in direct contravention of this objective.

## II

Apart from my view that the majority has overlooked the fundamental purpose of the Workers' Compensation Act, I also find the majority's reliance on *Fulton v. King Soopers*, 823 P.2d 709 (Colo.1992) misplaced. In *Fulton*, we noted that section 8–42–110(3) benefits employers by limiting their liability for compensation awards and by containing the costs inherent in training new or inexperienced employees; continuing, we stated that that section also benefits employees who, because they have incurred a permanent partial disability, may be confronted with restrictions in their future employment opportunities. *Fulton* 823 P.2d at 715. Thus we indicated that there is a kind of "quid pro quo" allure to section 8–42–110(3) that encourages employers to comply with the criteria set out in the statute so that employers and employees alike may benefit.

As noted by the majority, *see* op. at 262, we observed in *Fulton* that the incentive to the employer to reemploy disabled workers would become hollow, however, if the requirements of the liability limitation statute were triggered by some force remote from the employer's decision, upon reemployment, to compensate the employee at the employee's full pre-injury rate of pay. *Id.* Thus in *Fulton*, because the employer was unable to "control" the union's refusal to advance the employee from apprentice to journeyman mechanic after the employee was injured, we concluded that an interpretation of section 8–42–110(3) that includes union classification upgrades as part of the "usual wage adjustments" language under that statute would undermine the employer's ability to control costs. Based on this reasoning, we held that in accordance with the legislative purpose of section 8–42–

110(3), "usual wage adjustments" do not include expected union job classification upgrades. *Fulton* 823 P.2d at 715.

The majority now reads *Fulton*, incorrectly I think, to say that we must consider the forces outside the employer's control to see if those forces might in some way exempt the employer from complying with the express conditions of the liability limitation provision. In contrast, I read *Fulton* to require the employer to pay the maximum amount payable to the employee, i.e., to fully compensate the employee before the statutory benefits to the employer attach. I would thus limit any exception to this principle to a case like *Fulton*, wherein the employer is the sole source of the "employee's pre-injury rate of pay." Unlike the employer in *Fulton*, in the instant case, Snyder Oil was not Embree's sole source of previous compensation.

Next, I am unable to reconcile the majority's concern that the employer might be "penalize[d]," unless it holds as it does. Op. at 263. Were section 8–42–110(3) not available to an employer, the employer would be required to compensate the disabled worker through a full permanent partial disability award based on all pre-injury compensation. Section 8–42–110(3) merely allows the employer to compensate the employee with a more limited medical impairment payment when the worker is reemployed by the employer, and as a consequence, is made whole because his total compensation is equal to his pre-injury rate of pay. As such, that provision provides the employer with an alternative to paying the employee a permanent partial disability award, i.e., under section 8–42–110(3), the employer is only obligated to pay limited medical impairment benefits when the employer rehires the employee at the pre-injury rate of pay. Thus section 8–42–110(3) changes the form of the employee disability benefit but not its nature, i.e., full and fair compensation to the individual viewed as a whole worker.

## III

Put simply, the equitable result intended by section 8–42–110(3) is that the employee

be fairly compensated. In this case, the ALJ found that, as a result of injuries sustained during his employ at Snyder Oil, Embree was no longer able to perform the work he had been engaged in for over twenty years, i.e., dairy farming.[3] He was, however, generally able to continue working at Snyder Oil as he had prior to incurring the work-related injury. Thus, under the majority's holding, Snyder Oil is able to benefit from Embree's experience and training, and at the same time to limit its workers' compensation liability. That is, by permitting Snyder Oil to take advantage of the statutory liability limitation, the majority in effect allows Snyder to fully enjoy the intended statutory benefits of the provision, but at the expense of Frank Embree, one of its workers, whose work-related injuries now prevent him from working at his dairy farm, and from earning wages at the same level as he had prior to sustaining the disability.[4]

### IV

I believe the correct interpretation of section 8–42–110(3), consistent with the objectives which underlie the workers' compensation laws and one that comports with the spirit of the statutory scheme, would be to limit its application to those workers who are employed by only one employer or who receive total compensation after injury equivalent to their pre-injury rate of pay. In this way, the disabled employee would be fully compensated either through the receipt of comprehensive disability compensation benefits, or through the identical income received prior to his or her injury.

As a final thought, I wish to add that under the majority opinion, the efforts of men and women who must take on additional work in the course of providing for their own are now disregarded whenever an injured worker is reemployed at a salary which does not fairly represent his or her

proven pre-injury capacity. Because I cannot accept that the General Assembly intended such a result in enacting section 8–42–110(3), I respectfully dissent.

I am authorized to say that Justice LOHR and Justice MULLARKEY join in this dissent.

---

3. Annual income from Embree's dairy farm amounted to approximately $2,000 which comprised almost twenty percent of his pre-injury compensation.

4. The record is uncontroverted that Embree, employed five days a week, eight hours a day as a pumper, was able to return to work at Snyder Oil with no limitations; however, because his self-employment as a farmer involved shoveling and heavy lifting, he was unable to return to his prior, self-employed farming.