**LARIMER COUNTY, Petitioner,**

v.

**Beverly SINCLAIR, The Industrial Claim Appeals Office of the State of Colorado, and Division of Workers Compensation, Respondents.**

No. 96CA0392.

Colorado Court of Appeals, Div. I.

May 15, 1997.

Glasman, Jaynes, McBride & Musgrave, Richard H. Glasman, Ronald C. Jaynes, Denver, for Petitioner.

Burton, Busch & Garcin, W.M. Busch, Jr., Loveland, for Respondent Beverly Sinclair.

No Appearance for Respondents Industrial Claim Appeals Office and Division of Workers Compensation.

Opinion by Judge METZGER.

Petitioner, Larimer County, appeals the order of the Industrial Claim Appeals Office (Panel) awarding respondent, Beverly Sinclair (claimant), temporary total disability (TTD) benefits between the time she had reached maximum medical improvement (MMI) and the time petitioner offered her vocational rehabilitation. We affirm.

The facts are not in dispute. Claimant sustained a work-related injury in December 1993 and began receiving TTD benefits. She reached MMI in November 1994 and was released by her physician to modified employment. Petitioner did not offer modified employment; however, it did agree to pay TTD benefits pending its completion of a vocational assessment.

This assessment was completed in March 1995. Vocational rehabilitation was not of-

fered and claimant's TTD benefits were terminated by petitioner's final admission of liability in April 1995.

Claimant contested the final admission of liability and applied for a hearing, alleging that she had been unable to work since the date of her injury and that she was permanently and totally disabled. At a pre-hearing conference in mid-September 1995, petitioner offered claimant vocational rehabilitation pursuant to § 8–42–111(3), C.R.S. (1996 Cum.Supp.), and claimant accepted it.

Petitioner agreed to reinstate claimant's TTD benefits as of the date of its vocational rehabilitation offer. However, claimant argued that, because she had been unable to work, she was entitled to TTD benefits from March 1995 to September 1995. Petitioner refused to pay.

Claimant sought review of petitioner's refusal to pay. The Administrative Law Judge (ALJ) determined that claimant was entitled to the disputed benefits and awarded TTD benefits from March to September.

Petitioner appealed to the Panel. And, in the ensuing proceedings, both parties relied on § 8–42–105, C.R.S. (1996 Cum.Supp.) which provides in pertinent part:

(1) Except where vocational rehabilitation is offered and accepted as provided in section 8–42–111(3), [TTD] payments shall cease upon the occurrence of any of the events enumerated in subsection (3) of this section.

. . . .

(3) [TTD] benefits shall continue until the first occurrence of any one of the following: (a) The employee reaches [MMI].

The Panel concluded that the plain meaning of § 8–42–105(1), is that, where there is an offer and acceptance of vocational rehabilitation, the claim is excluded from the operation of § 8–42–105(3)(a) and attainment of MMI does not trigger termination of a claimant's entitlement to TTD benefits. Therefore, it affirmed the ALJ's award.

■ The sole issue on appeal is whether the Panel properly construed § 8–42–105(1). Petitioner argues that the "mandatory" language of § 8–42–105(3) requires that TTD benefits cease at the time a claimant reaches MMI. We disagree.

In construing a statute, our primary task is to give effect to the intent of the General Assembly. To accomplish this, we turn first to the words of the statute.

■ Legislative words and phrases should be interpreted according to their plain and obvious meaning, see *Snyder Oil Co. v. Embree*, 862 P.2d 259 (Colo.1993), and a forced, subtle, or strained construction should be avoided if the language is simple and the meaning is clear. *Wright v. Vail Run Resort Community Ass'n*, 917 P.2d 364 (Colo.App. 1996).

Here, if vocational rehabilitation is "offered and accepted," § 8–42–105(1) expressly "excepts" TTD payments from § 8–42–105(3). The common meaning of the term "except" is to exclude or omit, see *Webster's Third New International Dictionary* 791 (1986), and when it appears in a statute, it generally operates to restrict the applicability of the legislative language. N. Singer, *Sutherland Statutory Construction* § 47.11 (1992).

In our view, the use of this term reveals a clear intent by the General Assembly that, when an offer and acceptance of vocational rehabilitation occur, the provisions of § 8–42–105(3) do not apply. As a result, when there is an offer and acceptance of vocational rehabilitation, the attainment of MMI is irrelevant to a claimant's right to TTD benefits.

Bolstering our conclusion is the absence of any other language which would qualify the interrelationship between TTD benefits and the offer and acceptance of vocational rehabilitation. Specifically, there is no language to indicate that an offer "reinstates" TTD benefits. Nor is there language to indicate that an offer must "precede" the attainment of MMI.

Additionally, this construction harmonizes the provisions of §§ 8–42–105(1) and 8–42–105(3). If MMI is attained, but vocational rehabilitation is offered and accepted, claims for TTD benefits are addressed under the exception in § 8–42–105(1). On the other

hand, if MMI is attained and there is no offer of vocational rehabilitation, then such claims are properly addressed under § 8–42–105(3)(a). *See Burns v. Robinson Dairy, Inc.,* 911 P.2d 661 (Colo.App.1995).

Finally, this construction is consistent with the overall purpose of the Workers' Compensation Act to assure injured workers quick and efficient delivery of benefits at a reasonable cost to employers. *See* § 8–40–102, C.R.S. (1996 Cum.Supp.).

As the Panel noted, because the employer's decision whether to offer discretionary vocational rehabilitation is voluntary, an employer may offer it only in the limited situation in which the employer "necessarily fear[s] that the claimant is permanently and totally disabled and there is a high probability of such a finding unless vocational rehabilitation is completed." Viewed in this context, the exception in § 8–42–105(1) offers the injured claimant not a "windfall," but rather, the quick and efficient delivery of necessary benefits. Moreover, it offers the employer the opportunity to avoid paying the higher cost of permanent total disability benefits.

The order is affirmed.

NEY and CASEBOLT, JJ., concur.