**KEN CARYL RANCH MASTER ASSOCIATION, a Colorado nonprofit corporation, d/b/a Ken Caryl Ranch Association, Plaintiff–Appellant,**

**v.**

**GRANITE STATE INSURANCE COMPANY, a corporation authorized to do business in the State of Colorado, Defendant–Appellee.**

No. 05CA0312.

Colorado Court of Appeals,
Div. V.

Aug. 10, 2006.

Certiorari Granted March 26, 2007.

§ 24–51–1105, C.R.S.2005.

Bell & Pollock, P.C., Bradley P. Pollock, Littleton, Colorado, for Plaintiff–Appellant.

Wheeler Trigg Kennedy LLP, John R. Trigg, Steven M. Kelso, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge DAILEY.

In this insurance coverage dispute, plaintiff, Ken Caryl Ranch Master Association (Ken Caryl), appeals the trial court's summary judgment in favor of defendant, Granite State Insurance Company (Granite). We reverse and remand for further proceedings.

## I.

Ken Caryl is a nonprofit corporation that owns and cares for approximately 4,000 acres of private open space located on Ken Caryl Ranch. As part of its operations, Ken Caryl owns and operates a number of buildings, including an indoor horseback riding arena.

Granite is licensed to sell insurance products and conduct insurance business in the State of Colorado.

Ken Caryl purchased two commercial property insurance policies from Granite. The first policy (01 Policy) was, by its terms, effective from December 1, 2001 through December 1, 2002, and it provided "blanket coverage" on all buildings and personal property up to a limit of $4,937,971. The second policy (02 Policy) was, by its terms, effective from December 1, 2002 through December 1, 2003; it did not provide "blanket coverage" for Ken Caryl's buildings and property, but, instead, provided coverage on each individual building, up to a set amount.

Upon Ken Caryl's request, made on December 6, 2002, Granite issued an endorsement to the 02 Policy, increasing, for an additional premium, Ken Caryl's coverage on individual buildings by thirty percent. Under this endorsement, Ken Caryl's riding arena was covered under the 02 Policy for a loss of up to $193,325.60.

On March 19, 2003, the arena roof collapsed due to the accumulation of snow, causing a loss to Ken Caryl of over $300,000. When Granite refused to pay more than $193,325.60, Ken Caryl instituted the present action, claiming that, as a matter of law, the 01 Policy, with its blanket coverage of up to $4,937,971, was still in effect when the arena roof collapsed. Based on this premise, Ken Caryl asserted that Granite was liable for breach of contract, breach of covenant of good faith, breach of fiduciary duties, and violation of the Colorado Consumer Protection Act (CCPA).

Ken Caryl claimed that the 01 Policy was still in effect based on Granite's failure to (1) notify Ken Caryl forty-five days before the expiration of the 01 Policy, of the terms of, and premium for, the 02 Policy; and (2) extend the 01 Policy, at a prorated premium, for forty-five days beyond its original expiration date. According to Ken Caryl, under § 10–4–110.5(1), C.R.S.2005, Granite's failures operated, as a matter of law, to extend the 01 Policy for a term equal to the original term of the 01 Policy, that is, one year.

Granite contended otherwise, arguing: (1) under § 10–4–110.5(1), the 01 Policy was subject to a full-term extension only if no (or inadequate) notice of the change in coverage was supplied before the policy expired; (2) under § 10–4–110.5(1), because notice of the terms of and premium for the 02 Policy was provided to Ken Caryl before the expiration of the 01 Policy, Ken Caryl was entitled only to an extension of the 01 Policy for forty-five days; and (3) because the arena was damaged outside this additional forty-five-day period, the damage was covered by the 02, not the 01, Policy. Alternatively, Granite argued that, by requesting an endorsement to the 02 Policy several days after the 02 Policy went into effect, Ken Caryl affirmatively agreed to and accepted the new, decreased coverage of the 02 Policy.

Upon the parties' cross-motions for summary judgment, the trial court agreed with Granite's assertions and, after determining

that Ken Caryl was entitled to receive only the $193,325.60 paid by Granite, dismissed the case. Ken Caryl now appeals.

## II.

Initially, we reject Granite's contention that this court is without jurisdiction to consider this appeal because Ken Caryl failed to file its notice of appeal within the forty-five-day period prescribed by C.A.R. 4(a).

■ "Upon a showing of excusable neglect, the appellate court may extend the time for filing the notice of appeal by a party for a period not to exceed thirty days from the expiration of the time otherwise prescribed [in the rule]." C.A.R. 4(a). "To establish excusable neglect, the circumstances must show that 'there has been a failure to take proper steps at the proper time, not in consequence of carelessness, but as the result of some unavoidable hindrance or accident.'" *People v. Baker*, 104 P.3d 893, 896 (Colo.2005)(quoting *Farmers Ins. Group v. Dist. Court*, 181 Colo. 85, 89, 507 P.2d 865, 867 (1973)).

■ The court of appeals has broad discretion to determine whether excusable neglect, justifying an extension of time for filing a notice of appeal, has been shown. *Freyer v. Albin*, 5 P.3d 329, 331 (Colo.App. 1999).

■ A motions division of this court previously granted Ken Caryl's request to file its appeal one day out of time, based on Ken Caryl's undisputed representations that (1) Ken Caryl attempted to timely file the notice of appeal; (2) ordinarily, its courier needs only half an hour to travel from south Denver to the clerk's office; (3) on the day the notice of appeal was due, the courier left the law offices at about 4 p.m.; (4) on the way to the clerk's office, the courier encountered a serious accident, for which emergency vehicles and tow trucks were called to the scene; (5) the accident brought traffic to a complete standstill on Broadway; (6) eventually, the courier was able to turn off Broadway and make her way to the court via side streets; (7) because other traffic was also taking this route, traffic was heavier than normal on these side streets; (8) because of these cir-

cumstances, the courier's arrival at the courthouse was delayed until 5:02 p.m., when the courthouse was closed; and (9) the courier filed the notice of appeal immediately after the clerk's office opened the next morning.

We conclude that Ken Caryl's failure to timely file its appeal was the result not of carelessness but of unavoidable hindrance or accident. Consequently, we find no basis for disturbing the motions division's earlier excusable neglect determination, and we conclude that we have jurisdiction to address the merits of the appeal. *See Freyer v. Albin, supra.*

## III.

Ken Caryl contends that the trial court erred in granting Granite's motion for summary judgment. We agree.

We review de novo the trial court's summary judgment ruling. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995). Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions in the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *see also Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo.App.2005).

Here, the parties agree that there is no genuine issue of material fact which could affect the determination of which policy was in force when the arena roof collapsed. They assert, and we agree, that this determination depends solely on the interpretation of § 10–4–110.5(1), which is a question of law subject to de novo review by this court. *See Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004).

■ In interpreting a statute, our task is to give effect to legislative intent. In ascertaining legislative intent, we look first to the language employed in the statute. If the meaning of a statute is clear and unambiguous, we will apply the statute as written, unless to do so would lead to an absurd result. *In re Marriage of Bertsch*, 97 P.3d 219, 221 (Colo.App.2004).

Section 10–4–110.5(1) provides, in pertinent part:

No insurer shall increase the premium unilaterally or decrease the coverage benefits on renewal of a policy of insurance that provides coverages on commercial exposures ... unless the insurer mails by first-class mail to the named insured ... at least forty-five days in advance a notice, accompanied by the reasons therefor, stating the renewal terms and the amount of premium due. If the insurer fails to furnish the renewal terms and the statement of the amount of premium due at least forty-five days prior to the expiration date of the policy, the insurer shall automatically extend the existing policy for a period of forty-five days and the premium for this extended period shall be prorated based on the premium applicable to the existing policy. *If the insurer fails to meet the requirements of this section prior to the expiration date of the existing policy, the insurer shall be deemed to have renewed the insured's policy for an identical policy period at the same terms, conditions, and premium as the existing policy.*

(Emphasis added.)

■ At issue here is what "requirements" an insurer must meet before an existing policy expires to avoid an automatic renewal of that policy, for the same length of time and under the same terms, conditions, and premium. Agreeing with Granite, the trial court concluded that only timely or adequate notice of the terms, conditions, and premium of the new policy must be given before the expiration of the existing policy. However, agreeing with Ken Caryl, we conclude that § 10–4–110.5(1) requires more.

Section 10–4–110.5(1) consists of three sentences. The first provides a condition (timely notice), the satisfaction of which allows an insurer to put into effect, upon the expiration of an existing policy, a new policy increasing the premium or decreasing coverage. The second and third sentences detail the consequences of failing to provide timely notice of a change in a policy. The second sentence provides that, in the absence of timely notice, "the insurer shall automatically extend the existing policy for a period of forty-five days

and the premium for this extended period shall be prorated based on the premium applicable to the existing policy." The third sentence then provides that if the "requirements of this section" are not met, the "insurer shall be deemed to have renewed" the existing policy, for the same term and under the same conditions.

■ In our view, the phrase "requirements of this section" unambiguously refers to the "requirements" set forth in the preceding two sentences, namely, that the insurer either provide timely notice *or* affirmatively extend, at a prorated premium, the existing policy for forty-five days.

■ This interpretation is consistent with the evident purpose of § 10–4–110.5(1), that is, to protect Colorado consumers by not allowing them to be surprised and rushed into accepting increased premiums, decreased coverage, or both, upon short notice. To this end, we conclude that § 10–4–110.5(1) requires that, where timely notice is not given, the insurer must, before the existing policy expires, affirmatively act to extend the existing policy for forty-five days at a prorated premium charge. Only then may an insurer avoid the consequence of a "deemed" automatic renewal of the existing insurance policy.

In so concluding, we necessarily reject the trial court's interpretation that automatic renewal can be avoided simply by providing notice of a change in coverage sometime before the existing policy expires. Neither that type of notice nor, as Granite proposes here, a forty-five-day "grace" period by operation of law, of which the consumer is unaware and during which the consumer's premium is tied to the new, not the existing, policy, protects the consumer from surprise and rushed decision-making to ensure that at least some insurance coverage is maintained on the property.

We also reject Granite's assertion that our interpretation leads to an absurd result by requiring an insurer, as a remedy for untimely notice, to comply with a requirement which, by its very nature, cannot be accomplished before the expiration date of the existing policy. Granite is mistaken, however,

in believing that our interpretation requires the extension of the existing policy to have been in effect for the additional forty-five days before the end of the existing policy. Rather, our interpretation requires only that, by the end of the existing policy, the insurer affirmatively inform the insured that the policy will be extended for an additional forty-five days.

Finally, we are not persuaded that by requesting an endorsement to the 02 Policy, Ken Caryl manifested its assent to, and was bound by, the specific coverage outlined in that policy. Insurers may not rely on policies that seek, as here, to avoid a legislative mandate. *See Aetna Cas. & Sur. Co. v. McMichael,* 906 P.2d 92, 100 (Colo.1995) ("Insurance policy clauses that are contrary to a provision of a statute are void as against public policy."); *State Farm Mut. Auto. Ins. Co. v. Tye,* 931 P.2d 540, 543 (Colo.App.1996) ("An insurance policy provision is void and unenforceable, even if unambiguously written, if its effect is to dilute or avoid a legislative mandate."); *Brna v. Farmers Ins. Exch.,* 897 P.2d 851, 853 (Colo.App.1994)("If plaintiff is a person for whom coverage is required by statute, the insurer cannot limit its statutory obligation by a contrary contractual provision in the policy.").

Here, the purpose behind § 10–4–110.5(1), to protect consumers by affording them adequate opportunity to make informed decisions about their insurance needs, was defeated when Granite notified Ken Caryl of the changes in coverage thirty-three days before, and of the increase in the premium for the new policy only five days before, the expiration of the 01 Policy, without also informing Ken Caryl of its statutory right to a forty-five-day, prorated extension of the 01 Policy.

Because Granite did not timely notify Ken Caryl of the proposed changes in and premium for the 02 Policy, Granite was required to extend Ken Caryl's 01 Policy, at a prorated premium, for forty-five days to allow Ken Caryl time to consider and evaluate its insurance options. Granite did not do so; therefore, the 01 Policy was "deemed" automatically renewed for the same period of time and under the same conditions. Consequent-

ly, the 01 Policy was in effect when the arena roof collapsed, and Granite was liable for losses in excess of $193,325.60.

Although the manner in which we have resolved this issue may dispose of Ken Caryl's contract claim as a matter of law, we cannot simply direct the trial court to impose judgment for Ken Caryl. Ken Caryl asserted other claims, namely breach of covenant of good faith, breach of fiduciary duties, and violation of the CCPA, and Granite asserted various affirmative defenses. Because the resolution of these claims and defenses may well turn on disputed issues of material fact, judgment as a matter of law would be inappropriate.

Accordingly, the summary judgment is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge WEBB and Judge BERNARD concur.