**GRANITE STATE INSURANCE COMPANY, a corporation authorized to do business in the State of Colorado, Petitioner**

v.

**KEN CARYL RANCH MASTER ASSOCIATION, a Colorado nonprofit corporation, d/b/a Ken Caryl Ranch Association, Respondent.**

No. 06SC627.

Supreme Court of Colorado,
En Banc.

May 12, 2008.

Wheeler Trigg Kennedy LLP, John R. Trigg, Steven M. Kelso, Denver, Colorado, Attorneys for Petitioner.

Bell & Pollock, P.C., Bradley P. Pollock, Greenwood Village, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

We granted certiorari in this case to review the court of appeals' decision in *Ken Caryl Ranch Master Ass'n v. Granite State Insurance Co.*, 155 P.3d 457 (Colo.App.2006), in which the court of appeals construed Colorado's insurance notice statute, section 10–4–110.5(1), C.R.S. (2007), to require an insurer: (1) to notify its insured of any increase in premium or decrease in coverage at least forty-five days before the expiration of the existing policy; and (2) in the event that the insurer fails to notify the insured of the change at least forty-five days before the expiration of the insured's existing policy, to inform the insured that the existing policy has been extended for forty-five days at a prorated premium.[1]

The notice statute is comprised of three sentences. § 10–4–110.5(1). Under the plain language of the statute, we construe the first sentence as establishing the statute's notice requirements and the second and third sentences as providing distinct remedies to the insured if the insurer fails to comply with the notice requirements set forth in the statute's first sentence. If an insurer fails to provide adequate notice to the insured of an increase in premium or a decrease in coverage at least forty-five days before the expiration of the

insured's existing policy, then the second sentence of the statute "automatically extend[s]" the insured's existing policy for forty-five days at a prorated premium. *Id.* If an insurer fails to provide adequate notice to the insured of an increase in premium or a decrease in coverage before the expiration of the insured's existing policy, then the third sentence of the statute "deem[s]" the insured's existing policy to be renewed for a full term under the same terms, conditions, and premium as the existing policy. *Id.*

Accordingly, we construe the term "requirements" as it is used in the third sentence of the notice statute as referring to the notice requirements set forth in the statute's first sentence and not to the remedy provided for in the statute's second sentence. In addition, we construe the third sentence of the notice statute as providing an insured with the remedy of a full-term renewal of the insured's existing policy, but only if the insurer fails to provide adequate notice to the insured before the expiration of the insured's existing policy. We construe the second sentence of the notice statute as a remedy provision which "automatically extend[s]" the existing policy for forty-five days at a prorated premium. For this reason, the court of appeals erred in construing the notice statute to require that if an insurer provides late, but adequate, notice to the insured, that the insurer must "affirmatively inform" the insured that the policy will be extended for forty-five days at a prorated premium.

Here, Granite State provided late, but adequate, notice to Ken Caryl five days before Ken Caryl's policy expired. Granite State's late notice resulted in a forty-five-day extension of the policy at a prorated premium, but avoided a full-term renewal of the policy. Because Ken Caryl's loss occurred after the expiration of the forty-five-day extension, the

---

1. We granted certiorari on the following two issues:

   (1) Whether section 10–4–110.5(1), C.R.S. (2007) (Notice Statute), imposed upon Petitioner a full-term renewal of a prior commercial property insurance policy that covered the property of Respondent when Petitioner provided a notice of a change in coverage that was late, but was given prior to the policy's expiration.

   (2) Whether, during the period that Respondent's prior policy was extended by operation of the Notice Statute, the Notice Statute also prevented the parties from mutually entering into a new insurance contract that raised the coverage limits and both incorporated and put into effect the terms of Respondent's renewed insurance policy.

loss was governed by the terms of the policy as renewed by the parties. Hence, we reverse the court of appeals' judgment and remand the case to that court to be returned to the trial court for entry of judgment in favor of Granite State.

## II. Facts and Procedural Background

The first sentence of section 10–4–110.5(1) establishes Colorado's insurance notice requirement, namely that if an insurer is intending either to increase an insured's premium or to decrease an insured's coverage upon renewal of the insured's policy, then the insurer must notify the insured of the change at least forty-five days before the expiration of the existing policy:

No insurer shall increase the premium unilaterally or decrease the coverage benefits on renewal of a policy of insurance that provides coverages on commercial exposures ... unless the insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in advance a notice, accompanied by the reasons therefore, stating the renewal terms and the amount of premium due.

*Id.*

If an insurer fails to provide adequate notice to its insured at least forty-five days before the expiration of the insured's existing policy, then the second sentence of the statute "automatically extend[s]" the policy for forty-five days at a prorated premium:

If the insurer fails to furnish the renewal terms and the statement of the amount of premium due at least forty-five days prior to the expiration of the policy, the insurer shall *automatically extend* the existing policy for a period of forty-five days and the premium for the extended policy shall be prorated based on the premium applicable to the existing policy.

*Id.* (emphasis added).

If an insurer fails to meet the "requirements" set forth in the notice statute before the expiration of the insured's existing policy, then the third sentence of the notice statute imposes a full-term renewal of the policy

under the same terms, conditions, and premium as the existing policy:

If the insurer fails to meet the *requirements* of this section prior to the expiration date of the existing policy, the insurer shall be deemed to have renewed the insured's policy for an identical policy period at the same terms, conditions, and premium as the existing policy.

*Id.* (emphasis added).

Ken Caryl Ranch Master Association is a nonprofit corporation that owns and cares for approximately 4,000 acres of private open space located on Ken Caryl Ranch. As part of its operations, Ken Caryl owns and operates a number of buildings, including an indoor horseback riding arena. Granite State Insurance Company is licensed to sell insurance products and to conduct insurance business in Colorado.

Ken Caryl purchased two commercial property insurance policies from Granite State. The first policy—the 01 Policy—was, by its terms, effective from December 1, 2001, through December 1, 2002. The 01 Policy provided "blanket coverage" for Ken Caryl's buildings and other personal property up to a limit of $4,937,971. The second policy—the 02 Policy—was, by its terms, effective from December 1, 2002, through December 1, 2003. The 02 Policy did not provide blanket coverage for Ken Caryl's buildings and property, but rather provided coverage on each individual building up to a limit established by a predetermined value schedule.

Thirty-three days before the expiration of the 01 Policy, Granite State notified Ken Caryl that the 02 Policy would not provide blanket coverage for Ken Caryl's buildings and property. On November 26, 2002, five days before the expiration of the 01 Policy, Ken Caryl received a quotation for the 02 Policy, which included the renewal terms and the amount of premium due. Granite State never extended the 01 Policy for forty-five days at a prorated premium as required by the statute.

On December 6, 2002, five days after the expiration of the 01 Policy and upon Ken Caryl's request, Granite State issued an en-

dorsement of the 02 Policy that increased, for an additional premium, the 02 Policy's coverage of each individual building by thirty percent. Under this endorsement, the 02 Policy covered Ken Caryl's indoor riding arena for a loss of up to $193,325.60.

On March 19, 2003, the roof of Ken Caryl's riding arena collapsed due to an accumulation of snow. Ken Caryl claimed a loss in excess of $300,000. When Granite State refused to pay more than $193,325.60 toward the loss, Ken Caryl initiated the present action, claiming that the 01 Policy, with its blanket coverage up to $4,937,971, governed the loss based on Granite State's failure to provide timely notice of the decrease in coverage and its failure to inform Ken Caryl that the 01 Policy was extended for forty-five days at a prorated premium pursuant to its construction of the notice statute.

In its motion for summary judgment before the trial court, Granite State argued that although it provided late notice to Ken Caryl, Ken Caryl's only remedy was the forty-five-day extension provided for in the second sentence of the notice statute. Granite State further argued that the 02 Policy governed Ken Caryl's loss because the loss occurred on March 19, 2003, and the latest the 01 Policy could have applied was January 16, 2003, forty-five days after the expiration of the 01 Policy.

The trial court agreed with Granite State's assertions and granted its motion for summary judgment, reasoning that because Granite State notified Ken Caryl of the decrease in coverage before the expiration of the 01 Policy, "albeit five days prior to the lapse of the 01 Policy," its failure to extend the 01 Policy for forty-five days at a prorated premium did not "require them to renew the 01 Policy for an additional year at the same rates."

On appeal, the court of appeals reversed, construing the notice statute to require an insurer: (1) to notify its insured of any decrease in coverage or increase in premium at least forty-five days before the expiration of the existing policy; and (2) in the event that the insurer fails to notify the insured of the change at least forty-five days before the expiration of the insured's existing policy, to

inform the insured that the existing policy has been extended for forty-five days at a prorated premium. *Ken Caryl Ranch Master Ass'n,* 155 P.3d at 461–62. The court of appeals reasoned that the phrase "requirements of this section" as it is used in the third sentence of the notice statute "unambiguously refers to the 'requirements' set forth in the preceding two sentences." *Id.* at 461. Based on its determination that Granite State failed to provide timely notice to Ken Caryl of the decrease in coverage and failed to inform Ken Caryl of the forty-five-day extension, the court of appeals concluded that the remedy in the statute's third sentence applied and that the 01 Policy was deemed renewed for an additional year. *Id.*

Granite State petitioned this court for certiorari review, maintaining that the third sentence of the notice statute did not impose a full-term renewal of the 01 Policy based on Granite State's failure to extend the 01 Policy for forty-five days at a prorated premium, and that Ken Caryl's endorsement of the 02 Policy precludes any claim that the 01 Policy governed the loss.

### III. Analysis

Statutory interpretation is a question of law that we review de novo. *West v. Roberts,* 143 P.3d 1037, 1040 (Colo.2006). The notice statute is comprised of three sentences. § 10–4–110.5(1). Under the plain language of the statute, we construe the first sentence as establishing the statute's notice requirements and the second and third sentences as providing distinct remedies to the insured if the insurer fails to comply with the notice requirements set forth in the statute's first sentence. If an insurer fails to provide adequate notice to its insured at least forty-five days before the expiration of the insured's existing policy, then the second sentence "automatically extend[s]" the policy for forty-five days at a prorated premium. *Id.* If an insurer fails to meet the "requirements" set forth in the notice statute before the expiration of the insured's existing policy, then the third sentence of the notice statute imposes a full-term renewal of the policy under the same terms, conditions, and premium as the existing policy. *Id.*

The parties advance different interpretations of the term "requirements" as it is used in the third sentence of the notice statute. Ken Caryl argues that because the term is plural, it refers to both the notice requirements set forth in the first sentence of the notice statute and the forty-five-day extension remedy set forth in the second sentence of the statute. In contrast, Granite State contends that the term refers only to the notice requirements set forth in the statute's first sentence.

■■■ When interpreting a statute, our goal is to give effect to the intent of the General Assembly. *Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo.2006). Well-established principles of statutory construction dictate that we must first examine the plain language of the statute. *Snyder Oil Co. v. Embree*, 862 P.2d 259, 262 (Colo.1993). Where the statutory language is clear and unambiguous, we need not resort to interpretive rules of statutory construction. *Id.*

■ The plain language of the notice statute reveals that the purpose of the statute is to provide forty-five days' notice to an insured of its insurer's unilateral intent to increase the insured's premium or to decrease the insured's coverage upon renewal of the insured's existing policy. *See* § 10–4–110.5(1). For this reason, the notice statute either extends or renews the insured's existing policy if the insurer provides late or inadequate notice to the insured. *See id.* These remedies are set forth in the second and third sentences of the notice statute. It follows, then, that the term "requirements" as it is used in the third sentence of the statute refers to the notice requirements set forth in the statute's first sentence and not to the remedy for late notice set forth in the statute's second sentence.

■ The first sentence of the notice statute requires the notice to be: (1) sent by first-class mail to the insured's last known address; (2) sent at least forty-five days before the expiration of the insured's existing policy; (3) accompanied by the reasons for the change; and (4) accompanied by the renewal terms and the amount of premium due. *Id.* Words and phrases should be given effect according to their plain and ordinary meaning unless the result is absurd. *Snyder Oil Co.*, 862 P.2d at 262. Given that there is more than one requirement set forth in the first sentence of the notice statute, the legislature's use of the plural term "requirements" in the third sentence of the statute comports with our construction and is not absurd.

■ Our construction is bolstered by the General Assembly's use of the phrase "automatically extend" in the second sentence of the statute. § 10–4–110.5(1) ("If the insurer fails to furnish the renewal terms and the statement of the amount of premium due at least forty-five days before the expiration of the policy, the insurer shall *automatically extend* the existing policy for a period of forty-five days ...." (emphasis added)). The word "automatic" means "done without conscious thought or volition, as if mechanically" and "moving, operating, etc. by itself; regulating itself." *Webster's New World College Dictionary* 93 (3d ed.1996). We presume that the legislature had knowledge of the legal import of the words it used, *People v. Guenther*, 740 P.2d 971, 976 (Colo.1987), and that it intended each part of a statute to be given effect, § 2–4–201(1)(b), C.R.S. (2007). As such, we may properly conclude that the General Assembly's choice of the word "automatic" was a deliberate one, calculated to extend an insured's existing policy for forty-five days without any affirmative act on the part of the insurer.

Even if we assume that the statutory language is ambiguous, our review of the legislative history of the 1987 amendment to section 10–4–110.5(1) reveals only two relevant statements made by legislators in each house, each of which supports our construction. In the 1987 amendment, the General Assembly reduced the notice requirement from ninety days to forty-five days and added the two remedy sentences. *See* ch. 66, sec. 3, § 10–4–110.5(1), 1987 Colo. Sess. Laws 425, 426–27.

During a hearing held by the House Business Affairs Committee, one legislator explained that the automatic forty-five-day extension provided for in the second sentence of the statute serves two purposes: first, it

provides the insured with adequate time to search for a better rate or an alternative insurer; second, it provides the insurer with forty-five extra days to correct inadequate notice with minimal penalty. The legislator further explained that the third sentence of the statute was meant to prevent an insurer from continuously stalling in its obligation to provide notice to the insured. *See* Hearing on H.B. 87–1291 Before H. Bus. Affairs Comm., 56th Gen. Assemb., 1st Reg. Sess. (Colo. Mar. 3, 1987). During a hearing held by the Senate Business Affairs Committee, another legislator commented that the third sentence of the statute was included for situations in which an insurer provided no notice whatsoever to its insured regarding an increase in rate or decrease in coverage. *See* Hearing on H.B. 87–1291 Before S. Bus. Affairs Comm., 56th Gen. Assemb., 1st Reg. Sess. (Colo. Mar. 25, 1987).

■ Here, Granite State provided late, but adequate, notice to Ken Caryl on November 26, 2002, five days before the expiration of the 01 Policy. Pursuant to the second sentence of the notice statute, Granite State's late notice resulted in an automatic forty-five-day extension of the policy at a prorated premium. Having adequately notified Ken Caryl of the decrease in coverage before the expiration of the 01 Policy, Granite State did not trigger the full-term renewal remedy provided for in the third sentence of the notice statute. Ken Caryl's loss occurred on March 19, 2003, over two months after the expiration of the forty-five-day extension, and was, therefore, governed by the 02 Policy.[2]

Because we hold that the 02 Policy governs Ken Caryl's loss based on the plain language of the notice statute, we need not address Granite State's alternative argument regarding Ken Caryl's endorsement of the 02 Policy.

### IV. Conclusion

For the reasons stated in this opinion, we reverse the court of appeals' judgment and remand the case to that court to be returned to the trial court for entry of judgment in favor of Granite State.

Justice EID concurs.

Justice EID, concurring.

I join the majority opinion because I agree that under the plain language of section 10–4–110.5(1), C.R.S. (2007), Granite State's late notice resulted in a forty-five-day extension of the old policy, but not in a full-term renewal. *See* maj. op. at 568. I write separately to note that I would not resort to an examination of the statute's legislative history. *Id.* at 567–68; *see City of Colo. Springs v. Powell*, 156 P.3d 461, 468–69 (Colo.2007) (Eid, J., concurring in part and specially concurring in part).

---

**2.** We note that because Granite State provided late notice to Ken Caryl, the 01 Policy was automatically extended for forty-five days at a prorated premium pursuant to the remedy provided for in the second sentence of the notice statute. If Ken Caryl's loss had occurred during the forty-five-day extension, then the 01 Policy would have governed the loss.