Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2019 CO 1**

**No. 17SC33, *Colorado v. Medved*—Conservation Easement Tax Credits—Statute of Limitations.**

The supreme court holds that the statute of limitations period within which the Colorado Department of Revenue (the Department) may invalidate a conservation easement (CE) tax credit begins when the CE donor first claims the CE tax credit.

In this case, the transferees of a portion of CE tax credit claimed the credit before the donor/transferor did. The Department later disallowed the credit in its entirety. The transferees argue that the statute of limitations period began when they claimed the credit and that the Department disallowed the credit too late. The Department asserts, in accordance with its regulation, that the period began when the donor/transferor claimed the credit and that the disallowance occurred before the period expired.

Section 39-22-522(7)(i), C.R.S. (2005), states that the CE donor shall "represent[] and bind[] the transferees with respect to . . . the statute of limitations." Based on the plain language of section 39-22-522(7)(i), the supreme court concludes that the statute of limitations period begins only when the CE donor first claims the CE tax credit. Thus, the limitations period here had not expired when the Department disallowed the claimed

credit. Accordingly, the supreme court reverses the judgment of the court of appeals and remands for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 1

**Supreme Court Case No. 17SC33**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1514

**Petitioners:**

State of Colorado, Colorado Department of Revenue and Executive Director of the Colorado Department of Revenue,

v.

**Respondents:**

John Medved and Debra Medved.

**Judgment Reversed**
*en banc*
January 14, 2019

**Attorneys for Petitioners:**
Philip J. Weiser, Attorney General
Grant T. Sullivan, Assistant Solicitor General
Noah C. Patterson, Senior Assistant Attorney General
      *Denver, Colorado*

**Attorneys for Respondents:**
Fox Rothschild LLP
Christopher J. Dawes
Christopher T. Groen
Marsha M. Piccone
      *Denver. Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE BOATRIGHT** does not participate.

¶1     Whites Corporation donated a conservation easement (CE) and transferred a portion of the resulting CE tax credit to John and Debra Medved.  In 2006, the Medveds filed a return claiming the credit.  In 2007, Whites Corporation did the same.  In 2011, the Colorado Department of Revenue (the Department) disallowed the credit in its entirety.  The Medveds claim that the Department acted too late because their 2006 filing triggered the four-year limitations period within which the Department may invalidate a CE tax credit.  The Department disagrees, asserting that Whites Corporation's 2007 filing triggered the limitations period, and therefore the disallowance stands.

¶2     To resolve their dispute, we must interpret section 39-22-522(7)(i), C.R.S. (2005), which states in part that the CE donor shall "represent[] and bind[] the transferees with respect to . . . the statute of limitations."  The Department issued a regulation interpreting the statute to mean that "[t]he statute of limitations of the transferor . . . will also apply to the transferees of the credit."  Dep't of Revenue Reg. 201-2:39-22-522(3)(g)(viii), 1 Colo. Code Regs. 201-2 (2018).  The Department, unsurprisingly, argues that this interpretation is correct and that its regulation is entitled to deference.

¶3     A division of the court of appeals disagreed.  *Medved v. State*, 2016 COA 157M, ¶ 11, __ P.3d __.  The division found the statute's language ambiguous, *id.* at ¶ 16, and concluded that the General Assembly intended for the first claim filed to trigger the limitations period, *id.* at ¶ 24.  The division acknowledged that the Department's regulation was entitled to "due deference" but ultimately declined to follow it because it clashed with the statute's purpose and legislative history.  *Id.* at ¶ 25.  The Department appealed.

2

¶4 We hold that the statute of limitations period begins when the CE donor claims the CE tax credit. This accrual applies to and binds any transferees of the credit. So, the limitations period here began when Whites Corporation filed its tax return in 2007, and the Department's disallowance occurred before the period expired. We reach this conclusion based on the plain language of the statute. Because the Department's regulation comports with our plain language reading, we need not determine whether it is entitled to deference.

¶5 Accordingly, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶6 In March 2006, the Medveds purchased a portion of the CE tax credit resulting from Whites Corporation's donation of a CE.[1] The Department later discovered that the CE tax credit was invalid and disallowed it in its entirety. Three dates are crucial to understanding this dispute:

- October 2006: The Medveds filed their 2005 state income tax return claiming the CE tax credit.

- October 2007: Whites Corporation filed its 2005 state income tax return claiming the CE tax credit and identifying John Medved as a transferee.

---

[1] In its briefing, the Department suggests that Whites Corporation's donation was a sham. A criminal indictment included in the record supports its contention. However, the details of the donation are not at issue here. For our purposes, we simply observe that Whites Corporation is the "donor" of the purported CE.

3

- March 2011: The Department notified the Medveds that it had disallowed the CE tax credit in its entirety.

¶7 The Medveds appealed the disallowance to the district court. They moved for summary judgment, arguing that they triggered the four-year limitations period within which a CE tax credit may be disallowed when they filed their tax return in October 2006. Thus, they contend that the limitations period expired before the Department's disallowance. The district court denied their motion, concluding that Whites Corporation triggered the limitations period when it filed its tax return in October 2007. The Medveds stipulated to the invalidity of the CE tax credit but preserved the statute of limitations issue for appeal. They then appealed the district court's denial of summary judgment.

¶8 A division of the court of appeals reversed, relying on *Markus v. Brohl*, 2014 COA 146, 412 P.3d 647. *Medved*, ¶ 1. In *Markus*, a division of the court of appeals concluded that "section 39-22-522(7)(i) treats the CE donor, also known as the tax matters representative (TMR), and any transferee(s) as one entity in all matters—including the operation of a limitations period—related to the value and validity of the CE tax credit itself." ¶ 23, 412 P.3d at 653. Thus, the division concluded, the donor and transferee are subject to the same limitations period. *Id.* The *Markus* division then held, based on the language, purpose, and legislative history of section 39-22-522(7)(i), that the Department must complete its review within four years from the first time the credit is claimed. *Id.* at ¶ 45, 412 P.3d at 657. However, as the *Medved* division acknowledged, *Markus* left unresolved the question of *whose* claim triggers the limitations period. *Medved*, ¶ 1. The *Markus* division considered the distinct but related question of whether the Department

4

could review the validity and value of claimed CE tax credits each time the credits were claimed. *Markus*, ¶ 3, 412 P.3d at 650.

¶9 Nevertheless, the *Medved* division followed the reasoning of *Markus*. After concluding section 39-22-522(7)(i) was ambiguous with respect to whose claim triggered the limitations period, *Medved*, ¶ 16, it conducted a similar analysis of the purpose and legislative history of the statute, *id.* at ¶¶ 18–24. The *Medved* division agreed with the *Markus* division that the CE tax statutes serve two purposes: "(1) to incentivize donation of CEs for the public welfare; and (2) to provide pecuniary relief for land-rich, cash-poor individuals" (by providing a source of income to landowners who donate CEs). *Id.* at ¶ 19 (quoting *Markus*, ¶ 27, 412 P.3d at 654). To advance these goals, the division reasoned, the statute must not disincentivize the donation and transfer of CE tax credits. *Id.* But "[t]o allow a transferee's statute of limitations to be tolled until the donor's first claim is filed," the division continued, "would create a period of uncertainty and thus, a disincentive for buyers of these credits, contrary to the purpose of the statute." *Id.* The brief legislative history also included a statement related to a concern about prolonging the limitations period, strengthening the division's purpose analysis. *Id.* at ¶ 21. Thus, the division surmised "that when the transferee files a tax claim first, the General Assembly did not intend for the donor's tax filing to begin the statute of limitations." *Id.* at ¶ 23.

¶10 Relying on *Markus*'s reasoning that the statute "treats the donor and the transferee as one entity in all matters," *id.* at ¶ 1, the *Medved* division concluded that "the General Assembly intended the 'entity's' first tax credit claim to begin the four-year statute of

5

limitations period," *id.* at ¶ 24. And, the division continued, "[s]ince the 'entity' consists of both the donor and the transferee . . . , the first *claim* filed . . . , by either the donor or the transferee, begins the four-year statute of limitations period." *Id.* The division recognized that the Department's interpretation was entitled to "due deference" but ultimately declined to follow the Department's regulation due to its inconsistency with the statute's purpose and legislative history. *Id.* at ¶ 25.

¶11 We granted the Department's petition for certiorari.[2]

## II. Analysis

¶12 We begin with a brief overview of the statutory and regulatory scheme governing the creation, transfer, and use of CE tax credits. Then, we turn to an analysis of section 39-22-522(7)(i). Based on the statute's plain language, the statute of limitations period begins only when the CE donor first claims the CE tax credit. Finally, we conclude that the limitations period had not expired before the Department disallowed the Medved's claimed CE tax credit.

---

[2] We granted certiorari to review the following issues:

1. Whether the statute of limitations of a CE [conservation easement] donor applies to and binds the transferees of the resulting tax credit, as provided by section 39-22-522(7)(i), C.R.S. (2005).

2. Whether the Department's regulation, 1 C.C.R. 201-2:39-22-522(3)(g)([v]iii), constitutes a reasonable statutory interpretation of section 39-22-522(7)(i), C.R.S. (2005) entitled to deference.

(First alteration in original.)

6

## A. Standard of Review

¶13    This case involves a trial court's denial of summary judgment and the proper interpretation of section 39-22-522(7)(i). Both are questions of law, which we review de novo. *See Lewis v. Taylor*, 2018 CO 76, ¶9, 427 P.3d 796, 798.

## B. Statutory and Regulatory Framework

¶14    As relevant here, a "conservation easement in gross" is "a right in the owner of the easement" to impose a restriction or obligation onto land in order to maintain it for conservation purposes. § 38-30.5-102, C.R.S. (2018). An income tax credit is allowed to taxpayers "who donate[] . . . all or part of the value of a perpetual conservation easement in gross [(or CE)] . . . to a governmental entity or a charitable organization." § 39-22-522(2). The donor "may transfer all or a portion of the tax credit" to one or more transferees. § 39-22-522(7).

¶15    A CE donation must comply with a number of state and federal requirements to qualify for an income tax credit. *See generally* § 39-22-522; 26 U.S.C. § 170 (2012). The Department generally has a four-year window within which it may invalidate a claimed tax credit. *See* § 39-21-107(2), C.R.S. (2018) (requiring, in general, that "the assessment of any [income] tax, penalties, and interest shall be made within one year after the expiration of the time provided for assessing a deficiency in federal income tax"); 26 U.S.C. § 6501(a) (2012) (requiring, in general, that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed").

¶16    When the Medveds filed their tax return in 2006, section 39-22-522(7)(i), C.R.S. (2005) stated that the donor[3] "shall be the tax matters representative [(TMR)] in all matters with respect to the credit.  The [TMR] shall be responsible for representing and binding the transferees with respect to all issues affecting the credit, including . . . the statute of limitations."  We now turn to the interpretation of this section.

## C.  The Statute of Limitations of the CE Donor Applies to and Binds the Transferees

¶17    The division below concluded that section 39-22-522(7)(i) is ambiguous.  *Medved*, ¶ 16.  We disagree.  The statute makes the donor/TMR "responsible for representing and binding the transferees with respect to all issues affecting the credit, including . . . the statute of limitations."  § 39-22-522(7)(i).  And "bind" means: (1) "To impose one or more legal duties on (a person or institution)" or (2) "[t]o indenture; to legally obligate to serve."  Bind, Black's Law Dictionary (10th ed. 2014).  So, according to the statute's plain language, the donor/TMR shall impose legal duties on "the transferees with respect to all issues affecting the credit, including . . . the statute of limitations."  § 39-22-522(7)(i). This broad language includes the accrual provision.[4]

---

[3] The section references "[t]he donor . . . *or* the transferor."  *See* § 39-22-522(7)(i) (emphasis added).  However, the donor will always be the same person or entity as the transferor because CE tax credits may only be transferred once.  *See* Dep't of Revenue Reg. 201-2:39-22-522(3)(b).

[4] Section 39-22-522(7)(i) was amended in 2007 and now ends with a sentence specifying that "[t]he transferee shall be subject to the same statute of limitations with respect to the credit as the transferor of the credit."  *See* Ch. 290, sec. 3, § 39-22-522(7)(i), 2007 Colo. Sess. Laws 1227, 1230; *see also* § 39-22-522(7)(i), C.R.S. (2018).  While not at issue in this case, we observe that the language of the amendment reinforces our reading of section

¶18    To reach the opposite conclusion, the division reasoned that "[w]hile the statute's language . . . states that the TMR and transferee *are bound* with respect to all issues affecting the credit, it does not specify whether the donor's or the transferee's tax filing claiming the CE credit begins the four-year statute of limitations period." *Medved*, ¶ 16 (emphasis added). Thus, the division found "the plain language of the statute . . . subject to two possible interpretations": (1) that only the donor/TMR can begin the limitations period and (2) that "the first tax filing to claim the credit" begins the limitations period. *Id.* at ¶¶ 16–18. The Medveds urge us to follow the division and adopt this second reading.

¶19    But the statute does not say the TMR and transferee "are bound"; it unambiguously states that the TMR binds the transferee. The transferee is bound; the TMR does the binding. "[I]n interpreting a statute, we must accept the General Assembly's choice of language and not add or imply words that simply are not there." *People v. Diaz*, 2015 CO 28, ¶ 15, 347 P.3d 621, 625 (quoting *People v. Benavidez*, 222 P.3d 391, 393–94 (Colo. App. 2009)); *accord Turbyne v. People*, 151 P.3d 563, 568 (Colo. 2007). In this provision, the active phrasing demonstrates that the TMR's actions dictate the statute of limitations. The division's reading, in effect, flips the plain language of the statute.

---

39-22-522(7)(i). When someone says "*X* shall be subject to the same rule as *Y*," it is commonly understood to mean that *Y*'s rule applies to *X*. Thus, here, the phrasing of the amendment reinforces our reading that the transferees are subject to the same statute of limitations as the transferor. *See, e.g.*, *Pringle v. Valdez*, 171 P.3d 624, 628–29 (Colo. 2007) (examining sentence structure and phrasing to ascertain statutory meaning).

Where, as here, a transferee claims the credit before the TMR, its reading allows the transferee to bind the TMR as to the accrual of the limitations period.

¶20 Based on the plain language of section 39-22-522(7)(i), the donor's filing claiming the CE tax credit begins the limitations period.[5] And, because "the statutory language is clear and unambiguous, we need not resort to interpretive rules of statutory construction." *Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n*, 183 P.3d 563, 567 (Colo. 2008).

## D. Application

¶21 Here, the donor and TMR at the time of the filings, Whites Corporation, claimed the CE tax credit in October 2007. The Department disallowed the CE tax credit less than four years later, in March 2011. Therefore, the disallowance occurred before the limitations period expired.

## III. Conclusion

¶22 We hold that the statute of limitations period begins when the CE donor claims the CE tax credit. This accrual applies to and binds any transferees of the credit. So, the limitations period here began when Whites Corporation filed its tax return in 2007, and the Department's disallowance occurred before the period expired. We reach this conclusion based on the plain language of the statute. Because the Department's

---

[5] Our reading is consistent with the Department's regulation. *See* Dep't of Revenue Reg. 201-2:39-22-522(3)(g)(viii) ("The statute of limitations of the transferor . . . will also apply to the transferees of the credit . . . ."). Thus, we need not reach the question of whether the regulation is entitled to deference.

regulation comports with our plain language reading, we need not determine whether it is entitled to deference.

¶23    Accordingly, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.